No. 25998

Denver Publishing Company, a Colorado corporation d/b/a the Rocky Mountain News v. Edward G. Dreyfus, Manager of the Department of Health and Hospitals, City and County of Denver

(520 P.2d 104)

Decided March 18, 1974.

Clark, Martin and Pringle, Bruce D. Pringle, for plaintiff-appellee.

Max P. Zall, City Attorney, Brian H. Goral, Assistant, Robert D. Dowler, Assistant, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an appeal by the Manager of the Department of Health and Hospitals of the City and County of Denver from a judgment of the district court holding that autopsy reports are public records subject to inspection under the Colorado Open Records Act. 1969 Perm. Supp., C.R.S. 1963, 113-2-1, *et seq.* The Manager, who is ex-officio county coroner under Denver's Charter, refused to permit reporters of the Rocky Mountain News, a daily newspaper, to inspect 14 designated autopsy reports. The Denver Publishing Company, doing business as the Rocky Mountain News, brought this action to compel the Manager to permit the inspection of the specified reports.

The trial court's judgment directed the defendant to make available to the plaintiff all autopsy reports which had been requested except three. The plaintiff did not cross appeal on the three reports to which access was denied, so no further consideration will be given them. An additional four were tendered at the trial and are not in issue, leaving seven reports subject to the judgment.

We agree with the judgment of the trial court and affirm.

I.

The decision in this case, as in *Cervi v. Russell,* 184 Colo. 282, 519 P.2d 1189, is dependent on the interpretation of 1969 Perm. Supp., C.R.S. 1963, 113-2-1, *et seq.,* commonly known as the Colorado Open Records Act. This act was passed at the 1968 session following a one-year study by a special committee of the Colorado Legislative Council. *See Open Public Records for Colorado,* Research Publication No. 126.

The controversy arose when a reporter for the News orally requested permission of the defendant to inspect the 14 autopsy reports and was told to submit a formal application. The city editor wrote a letter asking to see the reports on the post mortem examinations of the 14 named individuals.

In response to the formal request, the manager advised that the autopsy reports of four individuals would be made available to plaintiff. The Manager denied the request on the balance for reasons, such as,

"The release of this autopsy report would, in my opinion, be contrary to the public interest and contrary to law.

"I am informed that this case is under investigation by another agency.

"There are criminal charges pending concerning events leading to Mr. P_____'s expiration.

"Further action or proceedings concerning this case have not been determined by other interested agencies at this time." The Manager based his refusal to make the reports available upon section 4 of the act (1969 Perm. Supp., C.R.S. 1963, 113-2-4).

At trial the Manager expanded upon and explained his reasons for the denials. As to those reports where the denial was alleged to be contrary to the public interest, the request of close relatives that the reports not be made public or the fact that the relatives could not be contacted was the justification; as to those alleged to be contrary to law, in one, it was denied because the subject's death was allegedly under investigation by the United States attorney for possible violations of the Federal Civil Rights Act by police officers; as to another, the Manager testified it was his understanding that criminal charges were pending against an accomplice of the decedent in connection with a robbery.

The Manager felt that if the reports were released during the pendency of an investigation, it might enable a criminal to take evasive action, which would be against the public interest. In this connection, however, he said that the purpose of the autopsy is to determine the cause of death and that the report does not contain the names of investigators or informants, nor of any alleged perpetrator.

The defendant further testified that his decision to withhold autopsy reports was done in the exercise of his discretion, and that he felt that there was no need to obtain court authorization for withholding the reports.

The city editor of the plaintiff, as to his reasons for requesting permission to examine the autopsy reports, testified that all the subjects of the autopsy reports except one were members of minority groups who had died as the

result of encounters with the police or had committed suicide while incarcerated in the city jail. The other related to the death of a policeman who had been killed by a minority citizen. In each case it appears that the city editor had received reports as to the circumstances of the several deaths which were not consistent with the news stories emanating from the police department.

It was stipulated that the city pathologist would testify that autopsy reports might contain information which, if made public, would embarrass the next of kin — such things as the presence of tuberculosis, venereal disease, the pregnancy of an unmarried female or that she had had recent sexual intercourse. However, none of these possibilities existed as to the reports being sought by the plaintiff.

## II.

■■ Public policy regarding public access to public records is succinctly set out in the declaration of policy in the Open Records Act:

"It is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided in this article or as otherwise specifically provided by law." 1969 Perm. Supp., C.R.S. 1963, 113-2-1.

This statement of policy clearly eliminates any requirement that a person seeking access to public records show a special interest in those records in order to be permitted access thereto.

The parties agree that autopsy reports are public records as defined in section 113-2-2. Thus, the central issue in this appeal is whether autopsy reports fall within one of the statutory exceptions to the public policy that public records are open for reasonable inspection. To resolve this question, we look to the relevant provisions of the act:

"113-2-4. Allowance or denial of inspection — grounds — procedure — appeal. — (1)(a) The custodian of any public records shall allow any person the right of inspection of such records or any portion thereof except on one or more of the

following grounds or as provided in subsection (2) or (3) of this section:

"(b) Such inspection would be contrary to any state statute; . . . .

"(2)(a)(i) The custodian may deny the right of inspection of the following records, unless otherwise provided by law, on the ground that disclosure to the applicant would be contrary to the public interest:

"(ii) Records of investigations conducted by, or of intelligence information or security procedures of, any sheriff, district attorney, police department, or any investigatory files compiled for any other law enforcement purpose; . . . .

"(3)(a) The custodian shall deny the right of inspection of the following records, unless otherwise provided by law, except that any of the following records other than letters of reference concerning employment, licensing, or issuance of permits shall be available to the person in interest under this subsection (3):

"(b) Medical, psychological, sociological, and scholastic achievement data on individual persons, *exclusive of coroners' autopsy reports,* but either the custodian or the person in interest may request a professionally qualified person, who shall be furnished by the said custodian, to be present to interpret the records; . . ." (Emphasis added.)

█ In construing the Open Records Act we are guided by the clear legislative intent manifested in the declaration of policy and the language of the act itself. Public records are to be open for inspection except as provided for in the act itself or otherwise *specifically* provided by law.

### III.

The Manager presents his contentions under three main headings and we will discuss them in the same order as presented:

"A. The Manager has discretion to deny inspection of coroner autopsy reports when disclosure would be contrary to the public interest.

"B. The Manager cannot permit inspection if disclosure would be contrary to state statutes.

"C. The News is not a party in interest to the confidential medical, psychological, sociological information contained in a coroner's autopsy report."

## A. Public Interest

The Manager contends that autopsy reports are investigatory records and that he may deny the right of inspection under the terms of 113-2-4(2)(a)(i) and (ii), citing *Losavio v. Mayber,* 178 Colo. 184, 496 P.2d 1032 (1972).

In *Mayber* we held that police records of prospective jurors compiled by the Pueblo Police Department were public records which came under the investigatory files exception of section 113-2-4(2)(a)(ii). We also held that once these records were given to the district attorney they were no longer "internal matters" subject to the above exception.

*Mayber* is not authority for the Manager's position because the autopsy reports sought contain only medical information relevant to a determination of the cause of death. Additional investigative information, including reports by the coroner's investigators, may be contained in the coroner's files but is not recorded in the autopsy report itself. Thus, the autopsy reports do not contain the kind of investigative information contained in the police reports in *Mayber.*

This is not to say that it might not be contrary to the public interest to release to the public a particular autopsy report early in an investigation relating to a death of the subject of the report under suspicious circumstances. The Open Records Act anticipated such situations. Section 113-2-4(1)(d) provides that inspection of a public record may be prohibited by the order of any court. Section 113-2-4(6) provides that the custodian of a record may apply to a district court to prevent disclosure of an otherwise un-exempted record when he feels that disclosure would do substantial injury to the public interest.

For instance, suppose that an autopsy disclosed that the subject had died from the ingestion of small doses of arsenic over a long period of time, whereas "natural causes" was the

reputed cause of death. Under such circumstances, the district attorney or the investigative officers might determine that non-disclosure of the cause of death would be advantageous in the early stages of the investigation. Subsection (6) would provide the essential protection. Although the burden of proof would be on the custodian of the report that burden would appear to be easily met under such circumstances.

The parties disagree as to the procedure to be followed when the custodian denies inspection of a particular report. We find the answer to the procedural problem in the statute. 1969 Perm. Supp., C.R.S. 1963, 113-2-4(4), (5) and (6) govern the procedure to be followed when the custodian denies access to any public record. Where this occurs, the applicant may request a written statement of the grounds for the denial, which statement shall cite the law or regulation under which access is denied. The written statement must be furnished forthwith. 113-2-4(4).

Subsection (5) provides that where any person is denied the right to inspect a public record, he may apply to the district court for an order directing the custodian of such record to show cause why he should not permit the inspection.

Notwithstanding the fact that the record sought might be otherwise available to public inspection, subsection (6) authorizes the custodian to apply to the district court for an order permitting him to refuse disclosure when, in his opinion, it "would do substantial injury to the public interest." This section specifically places the burden of proof upon the custodian. We note that this subsection was properly relied upon by the court in the three situations where it denied the News' application for inspection of autopsy reports.

### B. Statutory Prohibitions

The Manager contends that he cannot permit inspection if disclosure would be contrary to state statutes. We agree with this as a general statement. 1969 Perm. Supp., C.R.S. 1963, 113-2-1. However, under the circumstances here his attempt to bring the autopsy reports *in this litigation*

within the terms of various statutes misses the mark completely. The act itself requires that exceptions be *specifically* provided by law.

■ Appellant argues that one pertinent statutory provision is 1967 Perm. Supp., C.R.S. 1963, 66-8-1, *et seq.,* relating to vital statistics. In *Cervi v. Russell, supra,* we hold that vital statistic records have been classified as confidential by the general assembly. However, nowhere in the Vital Statistics Act is there any mention of autopsy reports. The mere fact that the death certificate and the autopsy report may both have a common element — the fact and cause of death — is not sufficient to take autopsy reports out of the operation of the Open Records Act. In the absence of a specific reference to autopsy reports, we cannot hold that the Vital Statistics Act encompasses autopsy reports.

■ The Open Records Act specifically addresses itself to coroners' autopsy reports in section 113-2-4(3)(b).[1] The act was introduced in the Senate as S.B. No. 3, and the phrase "exclusive of coroners' autopsy reports" was added by amendment in the House of Representatives. House Journal 1968, p. 339. This is convincing evidence of legislative intent to classify autopsy reports as public records open to inspection, rather than directing the denial of a right of inspection by any person as is the case with other medical, psychological, sociological, and scholastic data.

■ The other statutes cited by the Manager as being inconsistent with the trial court's order and which, he contends, require us to conclude that the autopsy reports are 'confidential,' include 1967 Perm. Supp., C.R.S. 1963, 66-12-4 (tuberculosis register) and C.R.S. 1963, 66-9-2 (venereal disease reports). The reports here sought contained no information covered by these statutes, so, factually, we do not reach the precise issue. However, we note that there is no

---

[1] 1969 Perm. Supp., C.R.S. 1963, 113-2-4(3)(a), (b):
"(3)(a) the custodian shall deny the right of inspection of the following records . . . .
"(3)(b) medical, psychological, sociological, and scholastic achievement data on individual persons, *exclusive of coroners' autopsy reports,* . . ."
(Emphasis added.)

*specific* reference to autopsy reports in those statutes, and in the absence of such reference we will not imply an exception to the Open Records Act.

    ■ Appellant also argues that the Criminal Libel Statute, 1971 Perm. Supp., C.R.S. 1963, 40-13-105 prohibits release of the autopsy report since in some cases the information contained in a report could "blacken the memory of one who is dead," if published. There has been no showing that the information contained in the autopsy reports in question would have this result if published, and in any event the criminal sanctions that may be imposed if a criminal libel does result from the release of an autospy report are sufficient to deter such actions without compromising the legislative policy of open access to public records. Without specific reference to the Open Records Act we will not imply an exception to that act from a criminal statute. In the proper situation appellant could seek to protect the confidentiality of a particular autopsy report under section 113-2-4(6).

Appellant's argument that 1969 Perm. Supp., C.R.S. 1963, 81-6-3 is a sufficient indication of a legislative policy of confidentiality of autopsy reports to overcome the policy of the Open Records Act is devoid of merit and will not be discussed.

## C. Party in Interest

The final point which the Manager argues is that the News is not a party in interest to the confidential medical, psychological, and sociological information contained in a coroner's autopsy report.

Most of the arguments under this heading of his brief are restatements of his arguments under the other points. We will not repeat the answers set out above, except to conclude with the legislative committee's statement in reference to the *Declaration of Policy*. It reads:

"The bill begins with a statement of policy to the effect that all public records shall be open for inspection by any person at reasonable times, except as provided by this bill or as otherwise specifically provided by law. This statement clearly eliminates any requirement that a person show a special

interest in order to be permitted access to particular public records. It also establishes the basic premise that in the absence of a specific statute permitting the withholding of information, a public official has no authority to deny any person access to public records."

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE PRINGLE does not participate.