**SARGENT SCHOOL DISTRICT NO. RE–33J, Petitioner,**

**v.**

**WESTERN SERVICES, INC., a Colorado not-for-profit corporation, Respondent.**

**No. 86SC75.**

Supreme Court of Colorado,
En Banc.

Feb. 22, 1988.

Caplan and Earnest, Richard E. Bump, Joy Fitzgerald, Boulder, for petitioner.

Conover, McClearn & Heppenstall, P.C., Hugh J. McClearn, Denver, for respondent.

VOLLACK, Justice.

The petitioner, Sargent School District No. RE–33J (School District), appeals from *Western Services, Inc. v. Sargent School District No. RE–33J*, 719 P.2d 355 (Colo. App.1986), in which the court of appeals reversed the trial court's entry of summary judgment on behalf of the School District. Western Services, Inc. (Western) had requested that the School District alter and publicly disclose certain scholastic data about its students. The School District refused, and Western filed suit in Rio Grande County District Court, asking that the court compel the School District to provide the records in question. The district court denied Western's request, holding that Colorado's Open Records Act did not require that the School District alter and disclose the requested records. The court of appeals reversed, holding that the School District had a duty under Colorado's Open Records Act to meet Western's request. Based on the specific language of the statute and the scope of Western's request, we reverse the court of appeals.

I.

This case involves interpretation of Part 2 of Colorado's Open Records Act, sections 24–72–201 to –206, 10 C.R.S. (1982 & 1987

Supp.) (the Act), which governs the inspection, copying, or photographing of public records.

The School District annually administers to its students a standardized examination called the "Comprehensive Test of Basic Skills" (CTBS). McGraw–Hill provides the CTBS test results to the School District in three different forms. The first form is a "label sheet" for each class which contains two removable self-adhesive labels for each student, showing the student's name and test result. The second form is a "class record sheet" containing an alphabetical list of all students in each class, with each student's test result listed next to his or her name. The third form is an "evaluator's summary" containing the total group scores of all students in each grade in the school district and comparing the scores to various norms and percentiles; the evaluator's summary does not identify the test scores of individual students.

Western is a non-profit corporation operating under the name "Chicano Education Project." Western works in certain areas of Colorado with the goal of improving the quality of public education in schools attended by Hispanic students. In 1981, Western requested that the School District provide it with the class record sheets (the second form provided by McGraw–Hill), with the individual students' names deleted, the scores randomly rearranged for anonymity,[1] and an ethnic code added in place of the students' names. The School District refused, and Western filed this action in Rio Grande District Court. Western filed a motion for order to show cause and for summary judgment, asking the district court to order the School District to provide the records as requested. Western specifically requested that the School District do the following:

provide it with copies (at [Western's] expense) of the CTBS/MacGraw–Hill [sic] Class Record Sheet for grades kindergarden [sic] through 12 for the scholastic years ending in 1981, 1982 and 1983 with the names of the individual students whose test scores are set forth on the Class Record Sheets blocked out, but with the ethnic origin of the individuals whose test scores are set forth on the Class Record Sheets indicated either by "S" to reflect that the test taker's ethnic background is Hispanic or "A" to reflect that the test taker's ethnic background is Anglo.

In response, the School District filed its own motion for summary judgment.

The School District's argument before the trial court was that the requested records were "scholastic achievement data on individual persons," therefore exempt from disclosure under section 24–72–204(3)(a)(I) of the Open Records Act. Western's contention was that if the School District modified the records as Western requested, the records would become "group scholastic achievement data from which the individual cannot be identified," hence subject to disclosure under the same provision of the Act.

After a hearing on the summary judgment motions, the district court issued a written order in which it refused to order the School District to comply with Western's request, holding that the records sought were exempt from disclosure as "scholastic achievement data on individual persons" under section 24–72–204(3)(a)(I). The court held that the Act did not create an implied duty on the School District to modify the documents in the manner requested. The court also held that even if there was a duty to delete the individual names from the class record sheets, the addition of the "ethnic code" requested by Western in effect forced the School District to create a new document, which it is not required to do. Based on these rulings, the

1. Western agreed that even if the names were removed from the class record sheets, if the scores remained in their original order, it would still be possible to ascertain which student in a class received a particular score. *See Kryston v. Board of Educ.,* 77 A.D.2d 896, 430 N.Y.S.2d 688 (1980) ("[R]elease of an alphabetical list of test scores would constitute disclosure of personally identifiable information since only 75 students are involved. We hold, however, that the court should have ordered the respondents to rearrange the scores so as to take them out of alphabetical order." *Id.* at 897, 430 N.Y.S.2d at 689).

trial court granted the School District's motion for summary judgment.

Western appealed, and the court of appeals reversed the trial court's summary judgment order, holding:

> [U]nder our public records act there exists an implied duty to delete exempt information from that which may be disclosed, . . . and to structure the record to provide the information which the public is entitled to have.

*Western Serv., Inc. v. Sargent School Dist. No. RE-33J*, 719 P.2d 355, 357 (Colo. App.1986) (citation omitted). In addition, the court of appeals held that this "implied duty" under the statute also required that the School District randomly rearrange the names and code them by ethnic origin, and that doing so "[did] not constitute the 'creation' of a new public record." *Id.* at 358.

The School District petitioned this court for a writ of certiorari to review the court of appeals' ruling. We granted certiorari and now address the issue of whether the court of appeals erred in holding that under the Colorado Open Records Act, the names and test results requested by Western are subject to public disclosure as non-exempt "group scholastic achievement data."

## II.

### A.

■ We note at the outset that the court of appeals held, and the parties concede, that the first form of the CTBS records, the label sheets, are exempt from disclosure because they constitute "individual scholastic data." 719 P.2d at 357. It is also undisputed that the third form, the evaluator's summary, is "group scholastic data from which the individual cannot be identified" and therefore non-exempt. Finally, there is no question that the label

sheets and the class record sheets contain identical information; the only difference is in the way the information is arranged. The thrust of the School District's argument is that because the label sheets are admittedly exempt "individual" information, and because the label sheets and class record sheets contain exactly the same information, the class record sheets cannot logically be held to contain "both exempt and non-exempt data." *Id.*[2] We agree.

Colorado adopted its Open Records Act in furtherance of the public policy "that all public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise specifically provided by law." § 24–72–201, 10 C.R.S. (1982). The Open Records Act is "a broad, general law" governing public records, which are defined as "all writings made, maintained, or kept by the state or any agency, institution, or political subdivision thereof for use in the exercise of functions required or authorized by law." *Uberoi v. University of Colo.*, 686 P.2d 785, 788 (Colo.1984); § 24–72–202(6), 10 C.R.S. (1982). Section 24–72–203(1) requires that "[a]ll public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise provided by law."

While the Act's general purpose is to provide access to public records, this policy is "qualified by the specific exceptions of the Act itself," found in Part 2. *Uberoi*, 686 P.2d at 788. The language in Part 2 limiting the general provisions in the Act is "expressive of the legislative intent that a court should consider and weigh whether disclosure would be contrary to the public interest." *Martinelli v. District Court*, 199 Colo. 163, 177, 612 P.2d 1083, 1093 (1980).

---

2. The court of appeals held:

It is undisputed that the self-adhesive labels containing the names of the individual students and their test scores constitute scholastic achievement data on individual persons exempt from disclosure under the public records act. It is also undisputed that the evaluator's summary sheet constitutes a group

record subject to public inspection. We conclude that the class record sheet, as a group scholastic achievement record, which also contains the names of those individuals who compose the group, is a record which contains both exempt and nonexempt data.

719 P.2d at 357.

The exception at issue here is subsection 24–72–204(3)(a)(I), which provides:

(3)(a) *The custodian shall deny the right of inspection of the following records*, unless otherwise provided by law; except that any of the following records, other than letters of reference concerning employment, licensing, or issuance of permits, shall be available to the person in interest under this subsection (3):

(I) Medical, psychological, sociological, and *scholastic achievement data on individual persons, exclusive of* coroners' autopsy reports and *group scholastic achievement data from which the individual cannot be identified;* but either the custodian or the person in interest may request a professionally qualified person, who shall be furnished by the said custodian, to be present to interpret the records;

10 C.R.S. (1982) (emphasis added).

We have previously addressed other provisions of Colorado's Open Records Act. *See Uberoi v. University of Colo.*, 686 P.2d 785 (Colo.1984) (the word "institution" as used in the Act does not apply to the University of Colorado); *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980) (personnel files and staff investigation bureau reports are not automatically exempt from discovery in civil litigation); *Denver Publishing Co. v. Dreyfus*, 184 Colo. 288, 520 P.2d 104 (1974) (legislature intended to classify coroners' autopsy reports as public records); *Losavio v. Mayber*, 178 Colo. 184, 496 P.2d 1032 (1972) (police records of arrests, convictions, and other information about individuals are not public). This is the first time we have addressed the language in section 24–72–204(3)(a)(I) which controls disclosure of "scholastic achievement data on individual persons" as distinguished from "group scholastic achievement data from which the individual cannot be identified."

The issue here is whether the information requested by Western is "scholastic achievement data on individual persons" or "group scholastic achievement data from which the individual cannot be identified."

If the scholastic data is "on individual persons," the statute protects the data from disclosure. If the test scores are "group data," then the documents are non-exempt and subject to disclosure.

In reversing the trial court's ruling, the court of appeals held that the test scores, as provided in the class record sheets, contained both exempt and non-exempt data. Having arrived at this conclusion, the court of appeals also held that the records custodian is under an implied duty to delete any exempt data from the record, rearrange the scores, create and add an ethnic code for each score, and make this altered form of the data available to the requesting party.

### B.

"In construing the Open Records Act we are guided by the clear legislative intent manifested in the declaration of policy and the language of the act itself. Public records are to be open for inspection except as provided for in the act itself or otherwise *specifically* provided by law." *Denver Publishing Co.*, 184 Colo. at 293, 520 P.2d at 107 (emphasis in original).

"[T]he legislature was careful to limit key provisions of the open records laws, making those provisions applicable except as 'otherwise provided by law' or except as 'prohibited by rules promulgated by the supreme court or by the order of any court.'" *Martinelli v. District Court*, 199 Colo. 163, 176, 612 P.2d 1083, 1093 (1980). One of the limiting provisions drafted by the legislature is a clause expressly prohibiting the disclosure of "[m]edical, psychological, sociological, and *scholastic achievement data on individual persons*, exclusive of coroner's reports." § 24–72–204(3)(a)(I), 10 C.R.S. (1982) (emphasis added). In 1981, the General Assembly added a limiting phrase to this exception, distinguishing individual data from "group scholastic achievement data from which the individual cannot be identified," and providing that the custodian "shall deny" the right of inspection of "scholastic achievement data on individual persons."

Where language in a statute is clear and unambiguous, our role is to apply the law

as written, in keeping with legislative intent. When the Open Records Act was drafted, the Legislative Council's recommendation to the General Assembly was that "scholastic achievement data on individual ... students" not be released because "[d]isclosure of records in this category might constitute an invasion of personal privacy." Colorado Legislative Council, Report to the Colorado General Assembly of 1967, Research Publication No. 126 at xvii.

■ Where the word "shall" is used in a statute, it is presumed to be mandatory. *People v. Clark*, 654 P.2d 847 (Colo.1982). When the statutory language is unambiguous, the legislative intent "is to be gleaned from that language, taking into consideration the entire statute." *People v. Dandrea*, 736 P.2d 1211, 1214 (Colo. 1987). Separate clauses within a statute should be interpreted to give effect to the entire statute. *People v. District Court*, 713 P.2d 918, 921 (Colo.1986). Finally, words in a statute should be given their plain and ordinary meaning. *Id.* at 922.

■ We recognize that exceptions to the broad, general policy of the Act are to be narrowly construed, but given the explicit language of the statute, we agree with the School District that the original document described is individual data protected from disclosure; to hold otherwise would render meaningless the distinction described in the statute: "group scholastic achievement

data *from which the individual cannot be identified.*" § 24–72–204(3)(a)(I) (emphasis added). The class record sheet is a sheet which provides the name of each test-taking student in the far left-hand column. The remainder of the page consists of test scores set out in columns aligned alongside each name. In this form, the records cannot logically be described as "group data from which the individual cannot be identified." Because the document provides individual scores directly corresponding to individual names, we conclude that these sheets, as provided to the School District by McGraw–Hill, are protected under the Act as "scholastic achievement data on individual persons."

### C.

Having reversed the court of appeals' holding that the class record sheets contain "both exempt and nonexempt data," we need not determine whether there exists a duty for the records custodian to delete the exempt data, rearrange the scores, provide an ethnic code, and release the records to Western.

However, we note that the cases cited by the parties and the court of appeals from other states, interpreting the open record acts of those states are not persuasive here. Most of these cases are addressing general privacy language [3] in an act, not specific language [4] governing, and distin-

---

**3.** "The majority of state FOI laws include some form of privacy exemption.... A few states specify to a greater extent which records are subject to a privacy exemption [including Washington, Iowa, and Texas]." Braverman & Heppler, *A Practical Review of State Open Records Laws*, 49 Geo.Wash.L.Rev. 720, 745 and n. 200. (1981). *See Kryston v. Board of Educ.*, 77 A.D. 2d 896, 430 N.Y.S.2d 688 (1980) (statutory provision states: "disclosure shall not be construed to constitute an unwarranted invasion of personal privacy ... (i) when identifying details are deleted." *Id.* at 897, 430 N.Y.S.2d at 689); *Family Life League v. Illinois Dep't of Public Aid*, 132 Ill.App.3d 929, 88 Ill.Dec. 117, 478 N.E.2d 432 (1985), *aff'd in part and rev'd in part*, 112 Ill.2d 449, 98 Ill.Dec. 33, 493 N.E.2d 1054 (1986) (construing section of State Records Act which provides: "[r]eports and records of the obligation, receipt and use of public funds of the State are public records available for inspection by the

public. ... [n]othing in this Section shall require the State to invade or assist in the invasion of any person's right to privacy." *Id.* 88 Ill.Dec. at 119 n. 2, 478 N.E.2d at 434 n. 2).

**4.** However, in *Short v. Board of Managers*, 57 N.Y.2d 399, 442 N.E.2d 1235, 456 N.Y.S.2d 724 (1982), the highest court of New York addressed a similar issue under New York's Freedom of Information Law. The petitioner sought access to individual medical records, arguing that the records could be made disclosable by the deletion of personal identifying data. The statute provided: "Every patient shall have the right to have privacy in treatment and in caring for personal needs, confidentiality in the treatment of personal and medical records...." Public Health Law, § 2803–C(3)(f). Because the medical records were specifically exempt under this provision of the statute, the court refused to characterize the records as "otherwise avail-

guishing between, group and individual scholastic achievement data. Colorado's Act differs from most other state public records acts in that respect. We note, however, that other jurisdictions have held that the state open records act contains an implied duty that the records custodian "delete exempt materials from an *otherwise disclosable record.*"[5] *State ex. rel Stephan v. Harder,* 230 Kan. 573, 582, 641 P.2d 366, 374 (1982) (emphasis added). "Several state courts have recognized a duty under various state disclosure laws to delete exempt materials *from an otherwise disclosable record." Northern Cal. Police Practices Project v. Craig,* 90 Cal.App.3d 116, 153 Cal.Rptr. 173 (1979) (emphasis added) (California Highway Patrol required to segregate and disclose non-exempt information found in patrol manual and officer's guide under California's Public Records Act).

Recognizing the policy underlying our Act and the expansive statutory interpretations given by other jurisidictions, we conclude that the unambiguous exceptions described by our General Assembly do not support a judicial interpretation of an implied duty. The parties attempt to create a distinction based on the form in which the data is provided, not the data itself. The mere fact that the data in this form may be subject to alteration which would render it to be a group scholastic achievement document does not create a duty on the part of the School District to do so. We decline to read such an implied duty into the statute under these facts. Based on our reading of section 24–72–204(3)(a)(I), the class record sheets represent data "on individual persons," not "otherwise disclosable" group data subject to alteration. Accordingly, we reverse the court of appeals.

able," hence subject to deletion of identifying details. *id.* at 403–05, 442 N.E.2d at 1236–38, 456 N.Y.S.2d at 725–27.

**5.** We recognize the potential problem noted by other states. "[A]ny record which an agency is required by law to keep could be rendered inac-

cessible to public scrutiny by the inclusion of confidential material." *Family Life League v. Illinois Dep't of Public Aid,* 132 Ill.App.3d 929, 934, 88 Ill.Dec. 117, 121, 478 N.E.2d 432, 436 (1985), *aff'd in part and rev'd in part,* 112 Ill.2d 449, 98 Ill.Dec. 33, 493 N.E.2d 1054 (1986). However, such is not the case here.