**CITY OF WESTMINSTER, a home-rule municipal corporation; and Robert Booze, Custodian of Records, Petitioners,**

v.

**DOGAN CONSTRUCTION COMPANY, INC., Respondent.**

No. 95SC617.

Supreme Court of Colorado, En Banc.

Jan. 13, 1997.

Justice LOHR delivered the Opinion of the Court.

This case presents the issue of whether the written results of telephone interviews with the references of a bidder on a municipal construction project, memorialized in notes on preprinted questionnaire forms, are "letters of reference concerning employment" for the purposes of the Colorado Open Records Act (Act). *See* §§ 24–72–201 to –206, 10B C.R.S. (1988 & 1996 Supp.). Dogan Construction Company, Inc. (Dogan), a bidder on a large construction project for the City of Westminster (City), brought an action seeking to compel the City to permit inspection of questionnaires that the City had used to record the results of telephone interviews conducted by the City's engineers with the bidder's references. The district court consolidated the case with the City's own action seeking a determination that it could properly deny access to such questionnaires, and the district court then held that the City could withhold the forms from inspection by Dogan pursuant to the statutory disclosure requirement exception for "letters of reference concerning employment." § 24–72–204(3)(a), 10B C.R.S. (1988).[1] The Colorado Court of Appeals reversed, holding that the questionnaire forms were not "letters of reference" within the meaning of that statutory exception. *City of Westminster v. Dogan Constr. Co.*, 914 P.2d 455, 458 (Colo.App. 1995). We granted certiorari and now reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the judgment of the district court.

I.

In December of 1993, the City solicited bid proposals for biomonitoring and anaerobic digestion modifications to the Big Dry Creek Wastewater Treatment Plant (Project). HDR Engineering, Inc. (HDR) was employed by the City as project engineer to provide bidding administration assistance, in-

Martin R. McCullough, City of Westminster City Attorney, Westminster, for Petitioners.

Wells, Love & Scoby, L.L.C., Kenneth D. Robinson, Boulder, for Respondent.

1. Although various subsections of § 24–72–204(3)(a) have been amended and may be found in the 1996 supplement, the entire applicable language for purposes of this opinion is located in the principal volume and the relevant subsections do not appear in the supplement. For ease of reference, we therefore cite to the principal volume throughout this opinion in referring to § 24–72–204(3)(a) and the applicable subsections.

cluding evaluation of the bids and recommendation of the award. The City received six bids for the Project. Dogan submitted the lowest bid, $4,079,000, underbidding the second lowest bidder by approximately $18,000.

Two of HDR's engineers interviewed the bidding contractors' references by telephone and recorded the results of those interviews on preprinted questionnaire forms. HDR contacted interviewees from lists of references submitted by the bidders, limiting its contacts to references knowledgeable about similar water or wastewater treatment projects the bidders had constructed since 1990. The preprinted questionnaire forms began with the bidder's name, and consisted of sixteen questions or items of information, including such subjects as "timeliness," "contractor/subcontractor relations," and "quality of work." The preprinted questionnaire forms ended with a space for general comments, immediately preceded by two pointed questions, i.e., "[w]ould you recommend this contractor to others[?]," and "[w]ould you use this contractor for similar work again[?]." HDR considered the references' responses to these latter two questions and the "timeliness" question to be the most important aspects of the interviews.

On January 17, 1994, HDR submitted its recommendations to the City. Although Dogan was "[t]he apparent low bidder (based on dollars alone)," HDR recommended that the City award the contract for the Project to the apparent second lowest bidder based on HDR's evaluation of the responses of the project owners and engineers interviewed. Dogan responded by soliciting positive letters of recommendation and submitting those letters to HDR for review. On January 31, 1994, however, after reviewing Dogan's submissions, the City awarded the contract for the Project to the second lowest bidder.

Dogan then requested that the City permit inspection of various documents concerning the contract award process for the Project, including "[a]ll documents and writings relating to the results of the telephone survey." The City allowed Dogan to inspect all of the requested documents except the completed questionnaires resulting from HDR's telephone interviews with the bidders' references. On March 29, 1994, the City informed Dogan that it denied inspection of the questionnaires pursuant to each of three statutory exceptions to the disclosure requirements of the Act, §§ 24–72–201 to –206, 10B C.R.S. (1988 Supp.), for (1) "letters of reference concerning employment," § 24–72–204(3)(a), 10B C.R.S. (1988), (2) trade secrets, privileged information, and confidential commercial data, § 24–72–204(3)(a)(IV), 10B C.R.S. (1988), and (3) public records, disclosure of which "would do substantial injury to the public interest, notwithstanding the fact that said record might otherwise be available to public inspection," § 24–72–204(6), 10B C.R.S. (1988).[2] That same day, the City filed in Adams County District Court an "Application for Order Permitting Public Entity to Restrict Disclosure of Information," pursuant to section 24–72–204(6), 10B C.R.S. (1988).[3] On April 6, 1994, Dogan filed an action in Adams County District Court to compel the City to permit Dogan to inspect the questionnaires. On motion, the trial court consolidated the two cases.

At the City's request, the trial court conducted an *in camera* inspection of the completed questionnaire forms and held a hearing to determine, as a threshold matter, whether those forms constituted "letters of reference concerning employment," § 24–72–204(3)(a), 10B C.R.S. (1988), for purposes of the Act, and therefore were not subject to

**2.** In a letter to Dogan's counsel, the City explained the public interest it considered at stake:

It is the opinion of the City's custodian of this information that disclosure of the contents of these records would do substantial injury to the public interest in that it would negate the City's ability to obtain the information necessary to make decisions in the best interest of the public relative to the award of major City contracts.

**3.** Although the City filed the request pursuant to § 24–72–204(6), 10B C.R.S. (1988), the City relied on the statutory exceptions to the Act found in both § 24–72–204(6), 10B C.R.S. (1988), and § 24–72–204(3)(a), 10B C.R.S. (1988). In its application to the court, the City apparently abandoned its claim that the § 24–72–204(3)(a)(IV), 10B C.R.S. (1988), exception to the Act for trade secrets, privileged information, and confidential commercial data allowed the City to withhold disclosure of the questionnaire forms.

inspection by Dogan. At the conclusion of argument on that issue, the court issued its oral ruling that the questionnaires fell within that statutory definition. The court began its ruling by stating that it was "mindful of the declared public policy under the act that all public records shall be open for inspection by any person at a reasonable time except as [statutorily] provided," and of "case law which suggests that the exceptions to disclosure must be read and construed narrowly." The court nevertheless determined that the completed questionnaire forms fell within the statutory disclosure requirement exception for "letters of reference concerning employment," § 24–72–204(3)(a), 10B C.R.S. (1988):

It's my ruling that the term "letters of reference" is a—as used in the statute—is a term used to describe communications or correspondence regarding individuals and the nature of information about an opinion of the qualification or qualifications of the described person.

In this case it's undisputed that the documents constitute a written format of questions to be posed by a telephone interviewer to the persons who were listed by Dogan as Dogan's references in support of its bid for a contract from the City. It is my ruling and finding that these documents do constitute letters of reference. The fact that they are in the nature or form of the interviewer's writing down the verbalized comments of the interviewee is not a point of critical distinction.

What is critical is that in the context which is apparent from the documents reviewed by the Court that the questions were asked in confidence, they were understood to be confidential, they were understood to be private, and the Court fails to perceive any reason to treat these documented interview results any differently than it would a letter issued in response to a request for information.

The second question is whether or not this concerns employment. The Court rules that the term "concerning employment" as used in the statute includes a decision to hire a person, including a corporate person to work for the City. The distinction between an independent contractor and an employee that is made for purposes of determining liability for negligence is not germane to the issue here presented.

It would be my ruling that the statute is clear on its face and to resort to rules of construction of the statute would not be necessary.

The court went on to note, however, that the same result would be reached by employing rules of statutory construction. The court stated:

I will add, however, that resorting to the rules of construction would, in this Court's opinion, achieve the same result.

A primary rule of construction is to determine the intent of the legislature and the policy which the legislature was intending to effectuate by enacting the statute.

The disclosure of information and the nature of personal references given in confidence and in privacy would most certainly be discouraged if the information were not maintained confidentially and private.

. . . .

[T]he public interest is greatly served where a public entity such as a municipal corporation has the ability to obtain open and candid references.

If the public entity were required to disclose these confidential documents, certainly it would impair the public interest to obtain and use this information.

The trial court thus held that both the literal language of section 24–72–204(3)(a), 10B C.R.S. (1988), and the legislative policies underlying that exception to the disclosure requirements of the Act supported the City's decision to withhold the questionnaire forms from disclosure.

Dogan appealed, and the Colorado Court of Appeals reversed in a divided opinion. *Dogan*, 914 P.2d at 456. The court held that the questionnaire forms did not fall within the exception to the disclosure requirements of the Act for "letters of reference concerning employment," § 24–72–204(3)(a), 10B C.R.S. (1988). *Dogan*, 914 P.2d at 457–58. The court of appeals held that the forms did not constitute "letters of reference," principally because in its view the questionnaires

were not encompassed within the literal meaning of "letters," and therefore never addressed whether the forms were "concerning employment." *Dogan*, 914 P.2d at 458. The court of appeals remanded for an evidentiary hearing, however, because the trial court did not address whether the City could withhold disclosure of the questionnaire forms pursuant to the Act's exception for documents the disclosure of which "would do substantial injury to the public interest," § 24–72–204(6), 10B C.R.S. (1988). *Dogan*, 914 P.2d at 458. We then granted the City's petition for certiorari review.[4]

## II.

### A.

■ In 1968, the General Assembly enacted what is commonly known as the Colorado Open Records Act, §§ 24–72–201 to –206, 10B C.R.S. (1988 & 1996 Supp.).[5] Ch. 66, secs. 1–9, 1968 Colo. Sess. Laws 201, 201–04. The City is a political subdivision subject to the Act. § 24–72–202(5), –202(6), –203, 10B C.R.S. (1988 & 1996 Supp.). The legislature passed the Act to declare and implement the public policy that "all public records shall be open for inspection" except as provided by the Act or otherwise specifically provided by law. § 24–72–201, 10B C.R.S. (1988); *accord Sargent Sch. Dist. v. Western Servs.*, 751 P.2d 56, 58 (Colo.1988); *Denver Publ'g Co. v. Dreyfus*, 184 Colo. 288, 292–93, 520 P.2d 104, 106–07 (1974).[6] Furthermore, "exceptions to the broad, general policy of the Act are to be narrowly construed." *Sargent*, 751 P.2d at 60.

### B.

■ Although the general purpose of the Act is to provide access to public records, the General Assembly qualified that purpose by providing specific exceptions to the statutory disclosure requirements. *Sargent*, 751 P.2d at 58 (citing *Uberoi v. University of Colo.*, 686 P.2d 785, 788 (Colo.1984)). The exception at issue in the present case excludes from mandatory disclosure to a person in interest "letters of reference concerning employment:"

> (1) The custodian of any public records shall allow any person the right of inspection of such records or any portion thereof except on one or more of the following grounds or as provided in subsection (2) or (3) of this section:
>
> . . .
>
> (3)(a) The custodian shall deny the right of inspection of the following records, unless otherwise provided by law; except that any of the following records, *other than letters of reference concerning employment*, licensing, or issuance of permits, shall be available to the person in interest under this subsection (3):
>
> . . .
>
> (III) Letters of reference

§ 24–72–204(3)(a), 10B C.R.S. (1988) (emphasis added). This statutory scheme denies the public access to all letters of reference but allows a "person in interest" to inspect letters of reference other than those within the category of "letters of reference concerning employment, licensing, or issuance of permits." *See id.* Dogan is a party in interest with respect to the questionnaires. The relevant questions we face today, therefore, are whether the questionnaire forms at issue constitute "letters of reference," and if so, whether those forms are "concerning employment."[7] To resolve these questions, we

---

**4.** We granted certiorari on the following issue:

Did the Court of Appeals err by holding as a matter of law that written questionnaire forms containing the results of telephone interviews with the references for prospective City of Westminster contractors are not "letters of reference" within the meaning of section 24–72–204(3)(a)(III) of the Colorado Open Records Act?

**5.** In 1969, the General Assembly added the exception to the disclosure provisions of the Act for "letters of reference concerning employment,"

§ 24–72–204(3)(a), 10B C.R.S. (1988). Ch. 265, sec. 1, 1969 Colo. Sess. Laws 925, 925.

**6.** We assume for the purposes of this opinion, as the parties have, that the questionnaire forms at issue constitute "public records" subject to the provisions of the Act. *See* §§ 24–72–201, –202(6), 10B C.R.S. (1988).

**7.** We reject Dogan's argument that our grant of certiorari, as framed, precludes our review of the "concerning employment" component of § 24–72–204(3)(a), 10B C.R.S. (1988).

must be guided by rules of statutory interpretation.

## III.

### A.

■ Our primary task in construing a statute is to ascertain and give effect to the legislative purpose underlying it. *East Lakewood Sanitation Dist. v. District Court*, 842 P.2d 233, 235 (Colo.1992); *In Interest of R.C.*, 775 P.2d 27, 29 (Colo.1989). To determine legislative intent we look first to the plain language employed by the General Assembly. *E.g., Farmers Group, Inc. v. Williams*, 805 P.2d 419, 422 (Colo.1991). "Words and phrases should be given effect according to their plain and ordinary meaning, and 'we must choose a construction that serves the purpose of the legislative scheme, and must not strain to give language other than its plain meaning, unless the result is absurd.'" *Id.* (quoting *Colorado Dep't of Social Servs. v. Board of County Comm'rs*, 697 P.2d 1, 18 (Colo.1985)). If a statute is unambiguous, there is no need to resort to interpretive rules of statutory construction. *E.g., PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo.1995). If a statute is ambiguous, however, we may consider indicia of legislative intent such as "[t]he object sought to be attained," § 2–4–203(1)(a), 1B C.R.S. (1980), "[t]he legislative history," § 2–4–203(1)(c), 1B C.R.S. (1980), and "[t]he consequences of a particular construction," § 2–4–203(1)(e), 1B C.R.S. (1980). *See also, e.g., Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 97 (Colo.1995) (legislative history and underlying purpose may be taken into account in construing ambiguous statute); *State Eng'r v. Castle Meadows, Inc.*, 856 P.2d 496, 504 (Colo.1993) (indicators of legislative intent include object legislature sought to attain, circumstances under which legislation was adopted, and consequences of a particular construction). "Because we also presume that legislation is intended to have just and reasonable effects, we must construe statutes accordingly and apply them so as to ensure such results." *Castle Meadows*, 856 P.2d at 504 (citing § 2–4–201(1)(c), 1B C.R.S. (1980); *Woodsmall v. Regional Transp. Dist.*, 800 P.2d 63, 67 (Colo.1990); *Petition of S.O.*, 795 P.2d 254, 258 (Colo.1990)). These general principles inform our analysis.

### B.

■ The term "letters of reference" has not been defined in the Act or in any cases construing it. The court of appeals focused solely on the word "letters" in the three-word phrase and accorded it a literal definition in concluding that the questionnaires did not constitute "letters of reference." This approach emphasizes the form of the document in which the reference information appears and fails to take account of the content of the information itself. Because we consider it at least questionable that this emphasis on form provides reliable guidance to the legislative intent in enacting a statute restricting access to information, we consider the term "letters of reference" as it appears in section 24–72–204(3)(a) to be ambiguous.[8]

Legislative history provides guidance to the intent of the legislature in excluding "letter of reference" from those public records available for inspection by a person in interest. By House Joint Resolution No. 1024, 1967 regular session, the Legislative Council was charged with designating a committee to conduct a one-year study "to determine those records of our state and local governments that should be open to public review and those that should have only limited access to such review or should be maintained solely for review by governmental officials in the course of their assigned duties." Colorado Legislative Council, Report to the Colorado General Assembly of 1967, Research Publication No. 126 at 15 (Legislative Council Report). The Committee on Open Records

---

8. Black's Law Dictionary, upon which the court of appeals relies, also includes in its most recent edition, as a definition of "letter," "[a] communication inclosed, sealed, stamped, carried and delivered by private or U.S. Postal service." Black's Law Dictionary 903 (6th Ed.1990). Such a narrow definition would exclude such common modern forms of written communication as fax transmissions as well as traditional communications not delivered by a postal service. This reinforces our skepticism concerning the reliability of dictionary definitions as a guide to legislative intent in construing the statute now before us.

(Committee), consisting of three senators and nine representatives, was constituted for that purpose. *Id.* at vii. The Committee's report and draft of a proposed bill was accepted by the Legislative Council for transmittal to the General Assembly. *Id.* at iii. We have previously looked to that report and draft as a useful indicator of legislative intent concerning the scope of an exception to the Act's disclosure requirements. *Sargent,* 751 P.2d at 60; *see also Denver Publ'g,* 184 Colo. at 290, 520 P.2d at 105 (Act "was passed at the 1968 session following a one-year study by a special Committee of the Colorado Legislative Council."); *cf. Martinelli v. District Court,* 199 Colo. 163, 177, 612 P.2d 1083, 1088 (1980) (language of Act is "expressive of legislative intent that a court should consider and weigh whether disclosure would be contrary to the public interest").

The Committee drafted a broader exception from disclosure for "letters of reference" than that which the legislature eventually adopted. The Committee's draft would have prohibited disclosure of all "letters of reference" even if the person in interest sought disclosure. Legislative Council Report at xvii, xxii. The Committee's overriding concern was that disclosure of "letters of reference" would "discourage honest evaluations." *Id.* at xvii. In arriving at this recommended exclusion from disclosure, the Committee mailed a letter and questionnaire in early June of 1967, along with a copy of an earlier Senate bill relating to proposed open records legislation, to state agencies, local government representatives, and other interested parties. *Id.* at 35, 137. The Civil Service Commission responded by commenting that "[r]eference material obtained on applicants is [currently] confidential. Employers are reluctant to provide information on any other basis except when only favorable comments are made." *Id.* at 40. According to the Colorado Education Association, the release of "letters of confidential evaluation" would cause such letters "either to go out of existence or be driven underground." *Id.* at 41. Similarly, the Board of Vocational Education explained that "[i]n many instances" recommendations for teaching applicants "are se-

cured only after assuring the writer that his comments will be kept confidential." *Id.* at 57. These comments, highlighted by the Committee, indicate that the Act's exception from disclosure for "letters of reference concerning employment," § 24–72–204(3)(a), 10B C.R.S. (1988), had its genesis in the legislators' concerns that allowing disclosure of reference material to the person in interest would discourage honest, frank, and candid evaluations of applicants for positions or projects within the public domain.

In adopting a literal definition of "letters," the court of appeals noted that the Act does define "writings" to include "all books, papers, maps, photographs, cards, tapes, recordings, or other documentary materials, regardless of physical form or characteristics." § 24–72–202(7), 10B C.R.S. (1996 Supp.).[9] The court of appeals then reasoned that had the legislature intended to shield from public disclosure documents not embraced within the literal meaning of "letters" it could have used a phrase such as "all writings relating to employment references." *Dogan,* 914 P.2d at 458. Because the legislature did not do so, the court of appeals concluded that to expand "letters" beyond its literal meaning would violate legislative intent and contravene the rule that exceptions to disclosure must be narrowly construed. We disagree.

We believe that legislative intent concerning the type of information to be shielded from inspection by the public by the term "letters of reference" and from persons in interest by the term "letters of reference concerning employment" is best determined by focusing on the legislature's concern with access to content, rather than on the form in which the information appears. As the dissenting opinion in the court of appeals noted, "the information contained in the telephone notes is exactly the same kind as would be contained in a "letter" of reference originating from another source and then delivered to the City; only the form in which that information is memorialized is different." *Dogan,* 914 P.2d at 459 (Davidson, J., dis-

---

9. "Writings" also "includes digitally stored data, including without limitation electronic mail messages, but does not include computer software." § 24–72–202(7), 10B C.R.S. (1996 Supp.)

senting). Although exceptions to disclosure are to be narrowly construed, this rule of construction must not be applied so as to adopt a construction contrary to the ascertainable legislative purpose. In the past, we have not hesitated to abjure literal definitions when such definitions would defeat legislative intent. *City of Durango v. Durango Transp. Inc.,* 807 P.2d 1152, 1156 (Colo.1991) (construing "municipal" as a description of function to be performed rather than of classification of governmental entity in order to implement legislative intent); *Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106, 1113 (Colo.1990) (no formalistic rule of grammar or word form should stand in the way of carrying out legislative intent); *People v. Hale,* 654 P.2d 849, 850 (Colo.1982) (where literal interpretation clearly not contemplated by legislature it will not be adopted); *People v. Silvola,* 190 Colo. 363, 369, 547 P.2d 1283, 1288 (1976) (where literal interpretation would contravene obvious and manifest legislative purpose, intent of framers will prevail over literal interpretation); *Frohlick Crane Service v. Mack,* 182 Colo. 34, 37, 510 P.2d 891, 892 (1973) (definition that exalts form over substance and overrides obvious legislative intent will not be followed). Instead, in such a situation we have considered the consequences of a proposed construction and have adopted constructions that will achieve consequences consistent with legislative intent. *People v. McNeese,* 892 P.2d 304, 310 (Colo.1995); *Walgreen Co. v. Charnes,* 819 P.2d 1039, 1044–45 (Colo.1991).

Finally, if we were to approve the construction of section 24–72–204(3)(a), 10B C.R.S. (1988), urged by Dogan and adopted by the court of appeals, we would endanger another policy objective that the legislature sought to achieve in passing the Act. If the questionnaire forms are not "letters of reference" for purposes of section 24–72–204(3)(a), as Dogan contends and the court of appeals held, then the forms must be released upon request to *both* Dogan *and* the general public. *See* § 24–72–204(3)(a), 10B C.R.S. (1988). However, the Committee's report contains numerous concerns about the release of reference and evaluation material to the general public based on comments and responses to the Commission's questionnaires by a variety of public officials.

As the eminent jurist Learned Hand observed in an oft-quoted passage:

> Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.

*Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.), *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

Based on our conclusion that the term "letters of reference" is ambiguous and on the legislative history upon which the Act is based, we believe that the legislature intended to protect from disclosure to the general public and to persons in interest documentary materials elicited from references in confidence and designed to inform an evaluation of bidding contractors' trade skills, including the questionnaire forms at issue today. We construe the statute to implement that intent.

## IV.

 Although we conclude that the questionnaire forms at issue constitute "letters of reference" for purposes of section 24–72–204(3)(a), the City is not entitled to withhold disclosure from Dogan, as the party in interest, unless those "letters of reference" are also "concerning employment." *See* § 24–72–204(3)(a), 10B C.R.S. (1988). The trial court addressed this issue in its ruling:

> The second question is whether or not this concerns employment. The Court rules that the term "concerning employment" as used in the statute includes a decision to hire a person, including a corporate person to work for the City. The distinction between an independent contractor and an employee that is made for purposes of determining liability for negli-

gence is not germane to the issue here presented.

The dissent to the court of appeals' opinion agreed: [10]

["]Employment" is the "[a]ct of employing or state of being employed," and to "employ" is "[t]o engage in one's service; to hire." *Black's Law Dictionary*, 471 (5th Ed.1979). In my view, the hiring of an independent general contractor for a public project is "employment" within the meaning of § 24–72–204(3)(a).

Although there are some contexts, such as determining vicarious tort liability, in which a distinction is drawn between independent contractor status and employee status, there are others in which the status of the employed person simply is not material. *Compare Huddleston v. Union Rural Electric Ass'n*, 841 P.2d 282 (Colo.1992) (determining tort liability) *with Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo.1989) (determining whether employer's workers had been "enticed away" to a competing business did not depend upon their status as "independent contractors").

In any event, this distinction, when made, concerns the person employed; in either case, the hiring entity is an "employer." *See, e.g., Western Stock Center, Inc. v. Sevit, Inc.*, 195 Colo. 372, 578 P.2d 1045 (1978). *See also* § 8–41–402(1), C.R.S. (1994 Cum.Supp.) (any entity which owns real property and which contracts out work to be done on that property "to any contractor, subcontractor, or person who hires or uses employees in the doing of such work shall be deemed to be an employer" under the Workers' Compensation Act).

Here, the City, as a hiring entity, justifiably is concerned with the past performance of the contractors it hires to perform public projects and reasonably may wish to take into account a contractor's past ability to complete projects on time and within budgets. I perceive no reason why protecting the confidentiality of such reference information should be of any less concern than protecting reference information about any other prospective employee.

*Dogan*, 914 P.2d at 460 (Davidson, J., dissenting). We agree with the foregoing analysis and conclusions of the dissent to the court of appeals' opinion.

## V.

We conclude that the questionnaire forms at issue constitute "letters of reference concerning employment" for the purposes of section 24–72–204(3)(a), 10B C.R.S. (1988), and therefore Dogan has no right to inspect them. In light of this holding, there is no need to remand to the district court to determine whether the questionnaire forms are otherwise protected from disclosure pursuant to the public interest exception to the Act, § 24–72–204(6), 10B C.R.S. (1988). We therefore reverse the judgment of the court of appeals and remand to that court with directions to reinstate the judgment of the trial court.

SCOTT, J., dissents.

Justice SCOTT, dissenting:

The majority holds that notes prepared by City agents on questionnaire forms completed pursuant to telephone interviews with the references of a bidding contractor constitute "letters of reference concerning employment" exempt from public access as required by the Colorado Open Records Act (Act), and that therefore, Dogan Construction Co. (Dogan) has no right to inspect them. Maj. op. at 593. Because I disagree with the majority's expansive interpretation of the phrase, "letters of reference concerning employment," under the Act, I respectfully dissent.

## I

In discerning the meaning of a statute, we look first to the statutory language, giving

---

**10.** The court of appeals' majority opinion did not address this issue because it found that the questionnaire forms did not constitute "letters of reference." *Dogan*, 914 P.2d at 458 ("In light of our conclusion that the telephone survey notes here are not 'letters of reference' within the meaning of the statute, we need not, and do not, address the additional issue of whether they concern 'employment' within the statutory meaning of that term.") (quoting § 24–72–204(3)(a), 10B C.R.S. (1988)).

words and phrases their plain and ordinary meaning. *Civil Rights Comm'n ex rel. Ramos v. Regents of University of Colorado,* 759 P.2d 726, 735 (Colo.1988). If the statutory language is plain, it should not be subjected to a strained interpretation or interpreted to mean that which it does not express. *Id.* Where the language of a statute is plain and the meaning is clear, we need not resort to interpretive rules of statutory construction, but must apply the statute as written. *Allstate Ins. Co. v. Smith,* 902 P.2d 1386, 1387 (Colo.1995). Words and phrases utilized in a statute should be given effect according to their plain and ordinary meaning because we presume the General Assembly meant what it said. *Id.* Our inquiry is best informed, therefore, by resort to the plain language of the Act. *Id.*

To determine whether the telephone survey notes may be inspected by Dogan, we must consider section 24–72–204(3)(a), 10B C.R.S. (1988), which provides:

> The custodian shall deny the right of inspection of the following records, unless otherwise provided by law; except that any of the following records, other than *letters of reference concerning employment,* licensing, or issuance of permits, shall be available to the person in interest under this subsection (3) . . .

> (III) Letters of reference.

(Emphasis added.) The majority places the telephone survey notes within the exception for "letters of reference concerning employment" by finding the terms "letters of reference" to be ambiguous, by reviewing the legislative history of the Act, and by concluding that the notes contain the same type of information that would be in such a letter. Consequently, the majority decides that such information was intended to be exempt from the Act.

I do not agree with the majority's conclusion that the simple language used is ambiguous such that we must consult the legislative history to determine its meaning. The majority's resort to the legislative history of the Act is unnecessary because the meaning of the term "letter of reference" is clear and unambiguous regardless of the lack of a definition of the terms in the Act or cases construing it. *See* maj. op. at 590. Thus, we cannot graft our interpretation of what we think the General Assembly intended when by the use of common sense terms it stated its intentions quite clearly in the language of the statute.

As the court of appeals stated in its opinion, the General Assembly could have used another term for this exception such as "writings" which is broadly defined in the Act. However, the statute limits the exception to "letters of reference concerning employment." This limitation evinces an intent on the part of the General Assembly to "protect a much narrower category of public records from disclosure to interested persons." *City of Westminster v. Dogan Constr. Co.,* 914 P.2d 455, 458 (Colo.App.1995). However, by reading "letters of reference" as including notes from a telephone survey, the majority impermissibly expands the exception set forth by the General Assembly. Not only does the majority turn from the commonly accepted meaning of the term "letter," but it also ignores our precedent which informs us that we are to narrowly construe any exceptions to the Act's objective of providing access to public records.[1]

It is important to note the policy behind the Act. Section 24–72–201, 10B C.R.S. (1988), provides, "[i]t is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise specifically

---

1. The majority states, "[a]lthough exceptions to disclosure are to be narrowly construed, this rule of construction must not be applied so as to adopt a construction contrary to the ascertainable legislative purpose." Maj. op. at 591. In terms of statutory construction, the very point of "narrowly construing" a statute is to restrict the application of the statute to limited, precise, exact, defined circumstances. This exception is defined as a "letter of reference." Clearly, notes

made by a third party indicating the results of a telephone survey do not constitute a letter of reference made by one person to another. Thus, by narrowly construing the exception to the Act as we are required to do, I find that the notes do not fall within the statutory prohibition. In construing an exception as such, I am guided by the plain language of the statute. If the plain meaning is clear, the analysis must end and no review of the legislative history need be undertaken.

provided by law." *See Sargent Sch. Dist. v. Western Servs., Inc.,* 751 P.2d 56, 58 (Colo. 1988); *Uberoi v. University of Colorado,* 686 P.2d 785, 788 (Colo.1984); *Denver Publishing Co. v. Dreyfus,* 184 Colo. 288, 292, 520 P.2d 104, 106 (Colo.1974). The statutory scheme of the Act reveals that it is a broad, general law. *Uberoi,* 686 P.2d at 788. Although the declaration that public records are to be open is qualified by specific exceptions, *id.,* the specific exceptions to the broad, general policy of the Act are to be narrowly construed. *Sargent,* 751 P.2d at 60.

The exception in the Act for "letters of reference concerning employment" does not apply to the telephone survey notes at issue here. The notes prepared during the telephone survey of the persons listed as references for Dogan do not constitute "letters of reference." Although the content of the notes may be similar to what might appear in a letter of reference, maj. op. at 591, we must be more circumspect in permitting exceptions to the stated purposes of the Act, e.g., that all public records shall be open for inspection. Letters of reference are the private, written comments of a reference while the notes at issue here were prepared by agents of the city of Westminster. If the General Assembly intended to make notes of city employees or its agents confidential similar to "letters of reference," it should have made that clear in the statute. It is the task of the General Assembly and not this court to write and amend statutes. Thus, because the statute does not call for an exemption from public disclosure upon request for notes from a telephone survey, Dogan should be permitted access to the notes from the telephone survey.

## II

The majority seeks to use the overall objective of the "letters of reference" exception to overcome the plain language of the statute. Although it is clear that the overriding concern of the General Assembly was to encourage honest evaluation by prohibiting disclosure of written comments not only attributed to, but made by references, maj. op. at 591, we must also ensure that the primary goal of the entire Act—access to public records—is served. In 1968, the General Assembly found, determined, and declared that the Act was necessary for the immediate preservation of the public peace, health, and safety. Colorado Legislative Council, Report to the Colorado General Assembly of 1967, Research Publication No. 126 at xxv. The bid protest procedure set forth in section 24–109–102, 10B C.R.S. (1988), is a means of preserving the public peace.

In this case, the City does not dispute that Dogan's bid protest would benefit from access to the notes written during the telephone survey. In its protest against the City's action awarding the contract to a competitor, Dogan contends that the telephone survey notes do not comport with the information received directly from the references. Thus, Dogan argues, the award was not made based on accurate information. Dogan entered the lowest bid and also submitted several favorable letters of reference from entities contacted during the telephone survey, yet it was not awarded the bid. *City of Westminster v. Dogan Constr. Co.,* 914 P.2d 455, 456–57 (Colo.App.1995). Clearly, the only way to determine whether the inaccuracies alleged by Dogan exist is to provide access to the notes. Providing Dogan with access to these notes is consistent with the primary purposes of the Act.

## III

In my opinion, Dogan should have access to the telephone survey notes because the notes do not constitute "letters of reference" prohibited from being inspected by interested parties. The Act commands that the state provide reasonable access to public records unless specifically exempted by statute. Therefore, I would affirm the court of appeals' decision holding that Dogan should be permitted access to the telephone survey notes because they do not constitute "letters" that fall within any exception to the Act. In light of my conclusion that the telephone survey notes do not fit within the statutory exception for "letters of reference," I do not address the second issue of whether they are "concerning employment" for purposes of the

statute.[2] For these reasons, I respectfully dissent.

**2.** I do note, however, that the majority states it is skeptical about relying on dictionary definitions to construe statutory terms, maj. op. at 590 n. 8, yet it agrees with the analysis in the court of appeals' dissent which relies on Black's Law Dictionary to decide the meaning of "employment" for purposes of determining whether the notes concerned employment. Maj. op. at ——.