Nancy BODELSON, Coroner of Jefferson County; Dave Thomas, District Attorney of the First Judicial District; Bradley Bernall and Misty Bernall, as parents and next friends of Cassie Rene Bernall; Joseph Raymond Kechter and Ann Marie Kechter, as parents and next friends of Matthew Joseph Kechter; Donald Francis Fleming and Diedra Ann Fleming, as parents and next friends of Kelly Ann Fleming; Robert George Curnow and Susan Marie Curnow, as parents and next friends of Steven Robert Curnow; John Michael Tomlin and Doreen Agnes Tomlin, as parents and next friends of John Robert Tomlin; Larry G. Nimmo, Elizabeth Ruth Nimmo, and Darrell David Scott, as parents and next friends of Rachel Joy Scott; Thomas Richard Mauser and Linda Lou Mauser, as parents and next friends of Daniel Conner Mauser; Richard Peter Petrone, Susan Annette Petrone, and Brian Eric Rohrbough, as parents and next friends of Daniel Lee Rohrbough; Neal Roger DePooter and Patricia Jo DePooter, as parents and next friends of Corey Tyler DePooter; Richard L. Townsend, Susan E. Townsend, Dawn L. Anna, and Bruce C. Beck, as parents and next friends of Lauren Dawn Townsend; Albert Bob Velasquez and Phyllis Elaine Velasquez, ,as parents and next friends of Kyle Albert Velasquez; and Linda Lou Sanders, as wife and next friend of William David Sanders, Plaintiffs and Cross–Appellees,

and

Thomas Klebold and Susan Klebold, Intervenors–Appellants,

v.

DENVER PUBLISHING COMPANY, d/b/a Rocky Mountain News, Intervenor–Appellee,

and

Denver Post Corporation, d/b/a The Denver Post, Intervenor–Appellee and Cross–Appellant.

Nos. 99CA1312, 99CA1314.

Colorado Court of Appeals, Div. IV.

May 11, 2000.

Rehearing Denied June 15, 2000.

and § 24–51–1105, C.R.S.1999.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

Frank J. Hutfless, County Attorney, William A. Tuthill, III, Assistant County Attorney, Timothy P. Cox, Assistant County Attorney, Golden, Colorado, for Plaintiffs and Cross–Appellees Nancy Bodelson, Coroner of Jefferson County, and Dave Thomas, District Attorney of the First Judicial District.

Norton–Lidstone, P.C., Michael J. Norton, Kristen C. Habinak, Englewood, Colorado; Stiner & Beck, Kathryn M. Beck, Golden, Colorado, for Parent Plaintiffs and Cross–Appellees.

Patterson, Nuss & Seymour, P.C., Franklin D. Patterson, Gregg E. Kay, Paige E. Taylor, Englewood, Colorado, for Intervenors–Appellants.

Baker & Hostetler LLP, Marc D. Flink, Demetri E. Munn, Denver, Colorado, for Intervenor–Appellee.

Faegre & Benson LLP, Thomas B. Kelley, Steven D. Zansberg, Christopher P. Beall, Denver, Colorado, for Intervenor–Appellee and Cross–Appellant.

Opinion by Judge MARQUEZ.

In these consolidated appeals under the Colorado Open Records Act (CORA), § 24–72–201, *et seq.*, C.R.S.1999, intervenor, the Denver Post Corporation, d/b/a The Denver Post (the Post), appeals the trial court's judgment restricting public inspection and disclosure of the autopsy reports resulting from the incident at Columbine High School on April 20, 1999. That judgment was in favor of plaintiffs, Nancy Bodelson, the Jefferson County Coroner, and Dave Thomas, the Jefferson County District Attorney (custodians), and a spouse, parents, and next friends (plaintiffs) of many of the persons who died as a result of the incident. Intervenors, Thomas and Susan Klebold (Klebolds), as parents and next friends of Dylan Klebold, appeal the trial court's judgment ordering release of the autopsy report of their son. We affirm in part and reverse in part.

On April 20, 1999, 12 students and one teacher were victims of a homicide at Columbine High School in Jefferson County. Eric Harris and Dylan Klebold, the two persons identified as the perpetrators, also died

there. On May 26, 1999, the custodians and plaintiffs filed a joint petition pursuant to § 24–72–204(6)(a), C.R.S.1999, to restrict public inspection and disclosure of the autopsy reports of the victims, asserting that disclosure would cause substantial injury to the public interest. The parties to the initial joint petition did not include the parents of Dylan Klebold. However, the Klebolds moved to join the joint petition to restrict disclosure and that motion was granted without objection.

The Post and the Denver Publishing Company, d/b/a the Denver Rocky Mountain News (the News), intervened as respondents and opposed the joint petition. After a hearing on May 28, 1999, in a ruling from the bench, the trial court found that release of the autopsy reports would cause substantial injury to the public interest. It granted the joint petition to restrict public inspection and disclosure of the autopsy reports of all persons who died as a result of the April 20, 1999, incident, unless or until there is a criminal prosecution requiring the disclosure of such autopsy reports or until further order of the trial court. The order provided that the parents and spouse of the deceased persons could obtain records of the autopsies. Although requested to do so, the court did not conduct an *in camera* review of the autopsy reports. In its later written order, the court incorporated its oral order of May 18, 1999, but deleted the words "until such time as a criminal investigation is commenced."

The News filed a post-trial motion for reconsideration as it pertained to the autopsy reports of Eric Harris and Dylan Klebold. On June 24, 1999, the trial court conducted a hearing and found that the CORA did not provide anyone except the official custodian the right to initiate an action to close a public record and that the court lacked jurisdiction to prohibit disclosure of the autopsy reports of Eric Harris and Dylan Klebold. The court then vacated that portion of the order concerning Eric Harris and Dylan Klebold, but stayed the effect of that ruling as it related to Dylan Klebold to allow the filing of an appeal. The stay was to remain in effect until resolution of the appeal. The court later modified its order to exclude one of the student victims, whose parents had not joined the petition. While the News opposes the Klebolds' appeal, it has not separately appealed the court's initial ruling granting the petition.

## I.

The Post contends that the trial court erred when it found that publication of the autopsy records would cause psychological harm to the general public such that disclosure of the records would do substantial injury to the public interest. We disagree.

■ A court's primary task in construing a statute is to give effect to the intent of the General Assembly. Courts should interpret statutory terms in accordance with their plain and ordinary meaning. *Thurman v. Tafoya*, 895 P.2d 1050 (Colo.1995). Questions of statutory interpretation are reviewed *de novo*. *Zubeck v. El Paso County Retirement Plan*, 961 P.2d 597 (Colo.App.1998).

■ It is the public policy of this state, with certain exceptions, that all public records shall be open for inspection by any person at reasonable times. *See* § 24–72–201. This declaration has eliminated any requirement that a person seeking access to public records show a special interest in those records in order to be permitted access to them. *Denver Publishing Co. v. Dreyfus*, 184 Colo. 288, 520 P.2d 104 (1974).

In pertinent part, § 24–72–204(3)(a), C.R.S.1999, provides:

> The custodian shall deny the right of inspection of the following records, unless otherwise provided by law . . .
>
> (I) Medical, mental health, sociological, and scholastic achievement data on individual persons . . . exclusive of coroners' autopsy reports. . . .

■ Thus, autopsy records are public records open to inspection. *Denver Publishing Co. v. Dreyfus, supra; Freedom Newspapers, Inc. v. Bowerman*, 739 P.2d 881 (Colo.App. 1987). However, the CORA also provides a procedure for limiting disclosure.

As relevant here, § 24–72–204(6)(a) provides that:

If, in the opinion of the official custodian of any public record, disclosure of the contents of said record would do substantial injury to the public interest, notwithstanding the fact that said record might otherwise be available to the public inspection, the official custodian may apply to the district court of the district in which such record is located for an order permitting him or her to restrict such disclosure.... In such action the burden of proof shall be upon the custodian....

■ Therefore, an official custodian can petition to restrict access to public records that are presumptively subject to disclosure. *See People in Interest of A.A.T.,* 759 P.2d 853 (Colo.App.1988).

■ A substantial injury to the public interest is not defined in the CORA. However, the substantial injury to the public interest exemption contained in § 24–72–204(6)(a) is to be used only in those extraordinary situations which the General Assembly could not have identified in advance. *Freedom Newspapers, Inc. v. Tollefson,* 961 P.2d 1150 (Colo.App.1998). The custodian of records has the burden to prove an extraordinary situation and that the information revealed would do substantial injury to the public. *Zubeck v. El Paso County Retirement Plan, supra.*

■ Exceptions to the CORA must be narrowly construed. *Sargent School District No. RE–33J v. Western Services, Inc.,* 751 P.2d 56 (Colo.1988).

### A.

■ The Post contends that it must be presumed that the General Assembly concluded that the "cost" of public access to the information—including being exposed to gruesome medical and forensic information that is necessarily included in all autopsy reports—was outweighed by the greater public interest in open government. Thus, according to the Post, it was improper for the court to reweigh the interests and restrict disclosure here. However, because § 24–72–204(6)(a) indicates the General Assembly's intent to protect from disclosure public records when substantial injury to the public interest would result, we reject this contention. *See Freedom Newspapers, Inc. v. Tollefson, supra.*

The petition in this case asserts that:

Release of graphic autopsy reports of the children of the Parent Petitioners would serve no useful purpose; would add to the media firestorm which these tragic and unfortunate events have created and continue to create; would cause great emotional harm or distress and embarrassment to the Parent Petitioners and the other members of their families; would unnecessarily inflame the members of the general public; would be an invasion of the personal privacy of the Parent Petitioners and their family members; and would do irreparable emotional harm to the Parent Petitioners and their family members with the result that the grieving and healing process which must occur in our community and in the lives of these Parent Petitioners and their families and is now underway would be permanently impeded or defeated.

In opposition to the petition, the Post argued that the General Assembly has determined that in all cases in which a coroner investigates the cause of death, the autopsy shall be released to the public. In order to justify denial of public access to the autopsy reports, the Post claimed that plaintiffs had to establish not only that these autopsy reports involve homicides by perpetrators that remain at large, but also that the reports contain specific information that, if disclosed, would likely foil an indicated investigative response. It also asserted that the public interest in the autopsy reports at issue here was particularly strong because they are relevant to the public's evaluation of the tragedy and responses by police and medical personnel.

At the hearing conducted on May 28, 1999, the coroner testified that the autopsy reports would provide a detailed description of the individual, including clothing and any marks on the body. She further explained that the reports would include a description of the damage to the external body, and identify any gunshot or knife wounds and track them

through the internal organs that had been damaged. The autopsy reports would also describe any specimens that were obtained, including blood, urine, swabs from the mouth, and sexual exams, and provide a conclusion as to the cause and manner of death. The coroner characterized these details as graphic and gruesome, and believed that the release of the reports would be "very traumatic."

The sister of the spouse of the deceased teacher testified that release of the autopsy reports would "reopen" her sister's wounds and "continue them."

A victim's parent testified that "this is a tragedy that goes beyond the scope of individual families. Columbine is a community, a community that has been wounded very deeply. They hurt. That will go on for some time to come. There are currently in place plans to, and procedures to assist over 2,000 ... victims of this tragedy.... They are still in deep mourning and in a traumatic state."

Another victim's parent testified that releasing the autopsy reports would be "like putting salt in an open wound."

Three other parents provided similar testimony and, without objection, the court admitted letters from other parents consistent with the testimony given at the hearing.

Although the Post had the opportunity to cross-examine the plaintiffs who testified, it chose not to do so. Further, when asked if it had any witnesses to call, the Post responded it did not. Thus, it did not present any evidence rebutting the contentions of the custodians and plaintiffs.

The trial court made extensive findings, including that the autopsies would provide graphic detail concerning the nature of the injuries and that the mechanics of death would clearly be "very hurtful and harmful for the families of these deceased persons." The court also found that it would be equally as hurtful to the public at large.

Although the court noted that the Post and the News had argued that there were lessons that could be learned from review of the autopsies, it found that their argument did not explain what lessons in particular might be learned from review of the autopsies. The court further found that this case was substantially different from the case law concerning disclosure of autopsy reports because: 1) it was unlikely that a homicide prosecution would ensue; and 2) there was no suggestion of an investigation of public entities or officials that would be affected by the contents of the autopsy reports.

After weighing "the good that [was] to be accomplished by release of this information against the harm to the entire community," the court concluded that it was clear that release of the contents of the autopsy reports would cause substantial injury to the public interest.

In our view, the trial court properly determined that the overwhelming grief caused by the nature and extent of this tragedy constituted an extraordinary situation that the General Assembly could not have identified in advance. It did not impermissibly weigh interests already balanced by the General Assembly. Rather, the court reached a conclusion based upon substantial evidence offered by the petitioners that disclosure of the autopsy reports would do substantial injury to the public interest. The CORA does not preclude such a conclusion.

Of prime importance to our determination that the trial court's ruling should be upheld is the fact that the petition was presented only five weeks after the incident and that the trial court's order is not an absolute bar to disclosure. Rather, it provides that public inspection and disclosure are restricted only until further order of the trial court. The court's order does not preclude the Post and others from seeking modification of the court's orders, urging redaction, or again requesting an *in camera* review.

### B.

We also reject the Post's assertion that the trial court created a new categorical exemption that would, in practical effect, exempt from disclosure not only autopsy reports, but numerous other public records that may be deemed highly offensive or objectionable to the general public. The trial court did not rule, and we do not hold, that every public

record that is deemed highly offensive or objectionable must or even may be categorically exempt. Rather, we conclude that each petition must be decided on a case-by-case analysis.

Here, the trial court correctly acknowledged that the victims' families could not have resisted disclosure had they attempted to do so on an individual basis. However, the court found that the losses of these families have so impacted this community that the whole community would feel the same pain the families would feel upon reading the contents of the autopsy reports. This "unique factor," according to the court, would do substantial harm to the public interest if the autopsies were released.

The court was not creating a categorical exemption for public records considered to be highly offensive or objectionable to the general public, but was simply applying the exception set forth in § 24–72–204(6)(a) to the unique circumstances before it, as the General Assembly authorized it to do.

### C.

Alternatively, the Post contends that the harm that would result from publication of "graphic details" contained in the autopsy reports is not a particularly unique or extraordinary basis for denying access to public records. We reject this contention.

We note in this regard that the trial court found, with record support, that this multiple homicide is perhaps the most extraordinary event in the history of this community. It also found that:

The public interest in this matter is demonstrated by the unprecedented outpouring of grieving shown by the public at large. This is demonstrated by the memorial service that was held shortly after the event, which was attended by the Governor of this State, the Vice President of the United States, and many state, local, and national dignitaries. There were estimates that the crowd attending this event was 70,000 or more people.

The grief that's present –the public grief that's present here is also demonstrated by the fact that the President of the United States chose to come here to meet with many of the victims and to attend an additional memorial service.

The Court also takes judicial notice of the memorial that was established in Clement Park. That memorial was created by literally thousands of persons who brought remembrances to that site. And thousands more visited that site as a way to seek solace for their grief.

Although the trial court noted the coroner's testimony regarding graphic details, it focused primarily on the extraordinary circumstances leading to the filing of the petition.

### II.

▇▇▇ The Post further contends that the trial court erred when it ruled that a party seeking access to autopsy reports must present evidence to establish that there is a public interest in obtaining access to a particular type of record, and that it erred in attempting to balance competing interests. We perceive no error.

We do not view the court's order as requiring the Post to present evidence or as misallocating the burden of proof as to disclosure. The custodians and plaintiffs alleged that release of the autopsy reports would serve no useful purpose and also presented evidence and argument to that effect. While the Post presented arguments against this position, a fair reading of the court's order is that it was rejecting those arguments and that it viewed the burden of proof to be the responsibility of the custodians and plaintiffs.

In *Denver Publishing Co. v. Dreyfus, supra,* plaintiff requested the autopsy reports of 14 persons who had died as a result of encounters with the police or had committed suicide while incarcerated in jail. The trial court directed the custodian to make all autopsy reports available except three. Although plaintiff did not cross appeal as to the three reports to which access was denied, the supreme court noted that the trial court properly relied upon the exception at issue here to deny plaintiff's application for inspection of those reports.

Further, a similar analysis has been used to determine whether disclosure of certain public records would cause substantial injury to the public interest in cases involving liberty and privacy interests. *See Freedom Newspapers, Inc. v. Tollefson, supra; Denver Post Corporation v. University of Colorado,* 739 P.2d 874 (Colo.App.1987).

Here, weighing the benefits of releasing the autopsy reports against the harm that would result to the victims' families and the Columbine community was permissible as part of the inquiry necessary to determine whether disclosure of the reports would cause substantial injury to the public interest.

Consequently, we perceive no error in the trial court's analysis.

### III.

In addition, the Post contends that the trial court's order authorizing nondisclosure of the autopsy reports violates the First Amendment. However, because the Post did not raise in the trial court the constitutional arguments it makes here, we decline to address them. *See Diamond Back Services, Inc. v. Willowbrook Water and Sanitation District,* 961 P.2d 1134 (Colo.App.1997)(contentions not raised in the trial court are not properly preserved for appellate review). To the extent the Post contended at the hearing that the court withheld information based on a need to channel public discussion, we conclude that such contention is not supported by the record. As set forth above, the court followed an analysis authorized by the CORA and case law.

### IV.

■ The Post further contends that the trial court erred when it refused to conduct an *in camera* review of the public records at issue to determine whether some of the information contained there could be disclosed without doing substantial injury to the public interest. We are not persuaded.

Here, in its brief and at the hearing, the Post requested that the trial court undertake an *in camera* review of the autopsy records to redact information that had nothing to do

with the cause of death. In anticipation of its findings, the trial court noted that it was not necessary to conduct an *in camera* review and declined the Post's suggestion.

Nothing in the CORA requires the trial court to conduct an *in camera* hearing.

In support of its contention, however, the Post relies on language in *Background Information Services, Inc. v. Office of State Court Administrator,* 980 P.2d 991 (Colo.App.1998), *rev'd,* 994 P.2d 420 (Colo.1999), that when public records contain both exempt and non-exempt information, the CORA imposes an implied duty on the custodian of records to redact the exempt data from the records in order to facilitate disclosure of the public information. As noted, that decision has been reversed. Further, in that case, no statutory exception limiting disclosure applied to the information sought. Thus, the Post's reliance is misplaced.

Accordingly, the trial court did not err in refusing to conduct an *in camera* hearing.

### V.

■ The Klebolds contend that the trial court had jurisdiction to seal the autopsy report of Dylan Klebold because, without objection, they joined and became part of the petition filed by the custodians and plaintiffs. They argue that the court erred in vacating its initial order as to him. We agree.

As a threshold matter, we reject the News' contention that the Klebolds lack standing to bring this appeal. As parties claiming to be injured by the trial court's ruling, they have standing to seek reversal of the ruling on appeal. *See Gansz v. People,* 888 P.2d 256 (Colo.1995).

The Klebolds filed a motion to join the joint petition to restrict disclosure of the autopsy report. They alleged that they were contacted by the Jefferson County District Attorney's Office and the County Attorney's Office of Jefferson County advising their counsel of the filing of the previous petition. They further alleged "that the Parent Petitioners (Klebolds) have reviewed the Petition and incorporate into this Petition all of the allegations contained therein."

At the hearing on May 28, 1999, the court addressed the Klebolds' motion to join in the petition. Counsel for the coroner and district attorney stated, "We have no objection to the motion for the Klebolds to enter in." The court then inquired of counsel for the Post and the News whether they had anything they wished to say on this issue. Counsel for the Post replied "No, Your Honor, we're not – as we're not parties yet, we don't. Even if we were, we would not object." Counsel for the News voiced no objection. The court then granted the motion and joined the Klebolds as parent petitioners in the action.

Later, the News moved the court to reconsider whether the autopsy reports of Eric Harris and Dylan Klebold should be released.

At a hearing on June 24, 1999, the trial court considered the motion filed by the News. Counsel for the family of the deceased teacher and the families of the other 11 victims took no position with respect to the relief requested by the News. Counsel for the Jefferson County Coroner and the district attorney made the following statement:

We believe that the Court had ample evidence before it at the hearing. When we heard this matter there was testimony that of at least 7 witnesses, and 4 written statements in the record which equally supports the Court's findings at that time concerning what the public interest is, how it can best be served in this case. With that in mind, I don't believe there's any need to revisit the issue.

At this time if the proponents of this motion wish to challenge the Court's ruling, they certainly have an opportunity to appeal, but there's no need to revisit the evidentiary matters that support the Court's findings and we would ask that the Court abide by its earlier ruling. Thank you.

The court found that the CORA does not provide a private person the right to bring a cause of action to prohibit disclosure. It ruled that the CORA affords that right only for a public official if, in the public official's opinion, the document should not be disclosed because it would cause substantial injury to the public interest. Reasoning that because the custodians did not ask the trial court to seal Dylan Klebold's autopsy report, the court concluded that it lacked jurisdiction to do so and vacated that portion of its May 28, 1999, order. However, the trial court expressly stayed its ruling to provide the Klebolds the opportunity to appeal.

The CORA allows official custodians of the public record to restrict disclosure under certain circumstances. *See* § 24–72–204(6)(a). A "custodian" means and includes the official custodian or any authorized person having personal custody and control of the public records in question. *See* § 24–72–202(1.1), C.R.S.1999.

Even though the petition was not formally amended to include them, the effect of the May 28 ruling was that the Klebolds joined the petition without objection from the custodians and without qualification. Thus, they were part of the petition brought by a party authorized by statute to bring such a petition and have standing to bring this appeal. Accordingly, the court had jurisdiction to act on the Klebolds' request and it erred in vacating, as to Dylan Klebold, the order sealing the autopsy reports.

In view of our disposition, we do not address the Klebolds' contention that disclosure of their son's autopsy report by application of the CORA violates their constitutional right of privacy in their individual capacity and as parents of a deceased minor. We also reject the News' contention that the Klebolds should be compelled to pay attorney fees pursuant to C.A.R. 38 for filing a frivolous appeal, and we do not address other contentions raised by the parties.

That portion of the court's order vacating the prior order of May 28, 1999, regarding Dylan Klebold is reversed. The remainder of the judgment is affirmed. However, we again emphasize that the trial court did not absolutely bar disclosure in perpetuity. Thus, the Post and others can now seek modification of the court's order and can urge redaction if appropriate. In such circumstances, the trial court should consider conducting an *in camera* review.

Judge VOGT and Judge TURSI *, concur.