Carl A. BLESCH, as coroner of Jefferson County, Colorado; Dave Thomas, as District Attorney for the First Judicial District; Thomas Klebold; and Susan Klebold, Petitioners–Appellees,

v.

**DENVER PUBLISHING COMPANY,** d/b/a Rocky Mountain News, Intervenor and Respondent–Appellant.

No. 01CA0728.

Colorado Court of Appeals, Div. V.

Nov. 21, 2002.

William A. Tuthill, III, County Attorney, Patricia W. Gilbert, Assistant County Attorney, Golden, Colorado, for Petitioners–Appellees Carl A. Blesch and Dave Thomas.

Isaacson, Rosenbaum, Woods & Levy, P.C., Gary Lozow, Denver, Colorado; Patterson, Nuss & Seymour, P.C., Gregg E. Kay, Franklin D. Patterson, Brian C. Proffitt, Englewood, Colorado, for Petitioners–Appellees Thomas Klebold and Susan Klebold.

Baker & Hostetler, LLP, Marc D. Flink, D. Rico Munn, Denver, Colorado, for Intervenor and Respondent–Appellant.

Elizabeth H. McCann, Assistant Attorney General, Juliana Zolynas, Assistant Attorney General, Denver, Colorado, for Amicus Curiae Colorado Attorney General Ken Salazar.

Ken Salazar, Attorney General, Alan J. Gilbert, Assistant Attorney General, Denver, Colorado, for Amicus Curiae Columbine Records Review Task Force.

Opinion by Judge TAUBMAN.

Appellant, Denver Publishing Company, d/b/a Rocky Mountain News (News), appeals the trial court's orders refusing to release the bulk of the autopsy report of Dylan Klebold under the Colorado Open Records

Act (CORA). We affirm in part, reverse in part, and remand.

In *Bodelson v. Denver Publishing Co.,* 5 P.3d 373 (Colo.App.2000), a division of this court affirmed in part and reversed in part the trial court's judgment restricting public inspection and disclosure of the autopsy reports of those killed at Columbine High School on April 20, 1999.

This appeal relates only to the autopsy report of Dylan Klebold, one of the perpetrators of the shooting.

After the division's decision in *Bodelson,* the News sought modification of the trial court's original judgment, and the trial court agreed, inter alia, to release the first page of Dylan Klebold's autopsy report. It refused to release the remainder of the autopsy report, and the News appealed. This court granted a limited remand for the trial court to consider the News' C.R.C.P. 60(b) motion, which the trial court denied.

## I. Standing

■ As a preliminary matter, we address the News' contention that Dylan Klebold's parents, Thomas and Susan Klebold, lack standing to invoke the CORA exception to prevent disclosure of their son's autopsy report because they are not the custodians of that report. We disagree.

CORA allows the custodian to oppose the disclosure of an autopsy report by petitioning the court to restrict the release of the report under certain circumstances. Section 24–72–204(6)(a), C.R.S.2002.

■ The law of the case doctrine mandates that decisions by an appellate court must be followed in later proceedings in the trial court. *Kuhn v. Dep't of Revenue,* 897 P.2d 792, 795 (Colo.1995). "Conclusions of an appellate court on issues presented to it as well as rulings logically necessary to sustain such conclusions become the law of the case." *Super Valu Stores, Inc. v. Dist. Court,* 906 P.2d 72, 79 (Colo.1995).

Here, the *Bodelson* division already concluded that the Klebolds had standing for the prior appeal:

Even though the petition was not formally amended to include them, the effect of the May 28 ruling was that the Klebolds joined the petition without objection from the custodians and without qualification. Thus, they were part of the petition brought by a party authorized by statute to bring such a petition and have standing to bring this appeal. Accordingly, the court had jurisdiction to act on the Klebolds' request....

*Bodelson, supra,* 5 P.3d at 381.

While the Jefferson County Coroner's Office and Dave Thomas, district attorney for the First Judicial District, take no position in this appeal as to the release of the Klebold autopsy report, they argue that it was appropriate for the trial court to consider the arguments raised by the Klebolds and that this court should consider those arguments as well. Further, on remand, the News did not request that the trial court again address the Klebolds' standing.

Therefore, the *Bodelson* decision concerning the Klebolds' standing is the law of the case, and we decline to address that issue again in this appeal when it was not raised in the trial court on remand.

## II. Motion for Modification of the Original Judgment

■ The News contends that the trial court abused its discretion in denying the motion for modification of the original judgment. Specifically, the News argues that the trial court erred in not disclosing the complete autopsy report of Dylan Klebold because (1) the custodians of the report did not oppose its release, and (2) the release of the report would not cause substantial injury to the public interest. We reject both contentions.

As to the first argument, even though the official custodian did not take a position regarding its release, the Klebolds' have standing, as discussed in Part I, to contest the release of their son's autopsy report.

As to the second argument, there is a presumption of disclosure of public records, with limited exceptions, under CORA, § 24–72–201, et seq., C.R.S.2002. *See* § 24–72–203(1)(a), C.R.S.2002. Autopsy reports are

public records statutorily open to inspection. Section 24–72–204(3)(a)(I), C.R.S.2002. However, public inspection and disclosure of autopsy reports may be prohibited or restricted where such disclosure would cause substantial injury to the public interest. Section 24–72–204(6)(a), C.R.S.2002; *Bodelson, supra,* 5 P.3d at 377.

■ Whether there has been substantial injury to the public interest is a question of fact. Generally, a trial court's factual findings are reviewed for clear error or abuse of discretion. *E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18, 22 (Colo.2000). A trial court's ruling is an abuse of discretion if it is manifestly arbitrary, unreasonable, or unfair. *Beauprez v. Avalos,* 42 P.3d 642, 652 (Colo. 2002).

Here, the trial court conducted an evidentiary hearing and an in camera review of the autopsy reports. It considered whether to release the entire autopsy reports of Dylan Klebold and the Columbine tragedy victims, except one victim's autopsy report which had previously been released. The autopsy report of Dylan Klebold's accomplice, Eric Harris, had also been released before the hearing.

Various witnesses testified at the hearing, including the city editor of the Denver Post, victims' family members, and two psychologists. For example, family members of the victims testified that release of the victims' autopsy reports would be hurtful to the victims' families and friends. A psychologist, who had conducted an informal, nonscientific survey on the release of autopsy reports, testified that public release of the remaining reports would have a negative impact on some members of the public. In rebuttal, another psychologist testified that release of the reports would trigger emotional reactions, such as grief and anger, in persons close to the victims, but not psychological harm.

Following the hearing, the trial court ordered the release of the complete autopsy report of victim Daniel Rohrbough and the initial portions of all other autopsy reports, including the Klebold report. The initial portions of those reports contain summaries of the findings and conclusions of the autop-

sies, including the pathology diagnosis and opinion as to cause of death. The trial court concluded that release of the initial portions of the autopsy reports would not cause substantial injury to the public interest because those portions contain nongraphic conclusions as to the type of gun used and part of body impacted.

Thus, we conclude that the trial court did not abuse its discretion in originally releasing only the first page of the Klebold autopsy report.

### III. C.R.C.P. 60(b) Motion

■ The News next contends that the trial court abused its discretion in denying its C.R.C.P. 60(b) motion. Specifically, the motion asserted that as a result of the passage of time and the continued release of law enforcement investigatory reports, including the 2001 crime scene report prepared by the Colorado Bureau of Investigation, following the trial court's denial of the motion for modification, there was no longer a basis for the trial court to find that substantial injury to the public interest would result from the release of Dylan Klebold's complete autopsy report. Because we conclude the trial court abused its discretion in denying the C.R.C.P. 60(b) motion, a remand for further proceedings is necessary.

### A. Passage of Time and Other Disclosures

We review a trial court's ruling on a C.R.C.P. 60(b) motion for abuse of discretion. *State Farm Mut. Auto. Ins. Co. v. McMillan,* 900 P.2d 1243, 1245 (Colo.App.1994), *aff'd,* 925 P.2d 785 (Colo.1996); *see Beauprez v. Avalos, supra.*

C.R.C.P. 60(b) provides that a party may be relieved from a final judgment or order when "it is no longer equitable that the judgment should have prospective application," C.R.C.P. 60(b)(4), or for "any other reason justifying relief from the operation of the judgment," C.R.C.P. 60(b)(5).

The *Bodelson* division considered time a significant factor in upholding the trial court's judgment, noting that the petition was presented only five weeks after the Co-

lumbine tragedy and that news organizations were not prohibited from seeking modification of the judgment. *Bodelson, supra,* 5 P.3d at 378.

Here, the 2001 crime scene report is extremely comprehensive, consisting of thousands of pages. The News included approximately fifty excerpted pages from the crime scene report in support of its C.R.C.P. 60(b) motion.

The crime scene report contains graphic and detailed information regarding the positions, injuries, and causes of death of the thirteen victims and of perpetrators Klebold and Harris. For example, the crime scene report describes one victim as having suffered multiple bullet wounds and details the blood drainage stains from those wounds. It describes the position of another victim's body, the wound suffered, and the drainage of blood from the victim's head. Much of this information was not contained in the previously released initial portions of the autopsy reports.

The initial portion of each autopsy report contains a summary of the coroner's findings and conclusions. The degree of specificity varies among the coroners who authored the reports. The initial portion of Dylan Klebold's autopsy report is very brief, approximately half a page in length. The initial portions of other victims' autopsy reports are more detailed, including the results of toxicology analysis and details of the wounds inflicted.

In denying the News' C.R.C.P. 60(b) motion, the trial court found that:

> The fact that other records have been published, whether by *court* order or otherwise, begs the question whether this particular record must be released.
>
> . . . .
>
> ... There is something uniquely personal and graphic about a physician's report of the step-by-step processes of his examination of a body that stands apart from other documents. This Court infers that a significant segment of our community would not wish to inflict that pain on the surviving family members and friends of the deceased victims.

This Court found, and I still find, that the same inference may reasonably be drawn in respect to Mr. and Mrs. Klebold. They were permitted to join the petition, and in that limited context they are "part of the group." Whether or not one considers them blameworthy for the actions of their son—a question on which I express *no opinion*—they are parents who have lost a child. They are parents who state through counsel that they will be terribly hurt if the graphic details of their son's autopsy are published in the news or on the Internet or elsewhere. This Court's inference from the evidence is that despite the revulsion that our community feels for both the act and actor, the basic humanity of the members of our community is such that they would not single the Klebolds out for separate treatment where it comes to the publication of the step-by-step conduct of the autopsy of their son.

We conclude that the trial court abused its discretion when it stated that release of the crime scene report "begs the question" whether the complete autopsy report of Dylan Klebold should also be released and when it did not consider the impact of the passage of time. The crime scene report reveals graphic and detailed information that the court should have analyzed before inferring that substantial injury to the public interest would result from the release of the complete Klebold report. Once the graphic details of the injuries and condition of the victims' and perpetrators' bodies became known to the public, the context for determining whether disclosure would cause substantial harm to the public interest was fundamentally altered.

The trial court also commented on the graphic and gruesome nature of autopsy reports generally. However, this observation applies to all autopsy reports, not just those in this case. Despite their graphic nature, autopsy reports are still public records open to inspection. *See* § 24–72–204(6)(a); *Bodelson, supra,* 5 P.3d at 377 (CORA's exceptions are narrowly construed). In addition, similar personal and graphic information has been made public through the release of the complete autopsy reports of Eric Harris, Isaiah

Shoels, and Daniel Rohrbough and the initial portions of the remaining autopsy reports.

Finally, the trial court's order denying the C.R.C.P. 60(b) motion focuses on pain to the Klebolds caused by release of their son's complete autopsy report. However, the controlling standard is public, not private, injury. Section 24–72–204(6)(a); *Bodelson, supra.*

Therefore, we conclude that it is necessary to remand this matter to the trial court to reconsider whether, given the passage of time and the release of the crime scene report, the publication of Dylan Klebold's complete autopsy report still would cause substantial injury to the public interest.

## B. Burden of Proof

■ In light of this remand, we address the Klebolds' request to clarify the burden of proof when a party moves to modify the trial court's original order restricting disclosure.

The parties disagree on who bears the burden of proof. The News argues that the burden should remain on the Klebolds to prove that substantial injury to the public interest would occur if the rest of their son's autopsy report were disclosed. In contrast, the Klebolds maintain that the movant, the News, bears the burden of showing a change in circumstances such that the original judgment is no longer valid. Once that burden is met, the Klebolds assert, the burden then shifts back to them to show that despite the change in circumstances, disclosure would still cause substantial injury to the public interest as required by § 24–72–204(6)(a). We agree in part with each party.

The term "burden of proof" refers to "the obligation to establish the truth of a proposition." *People in Interest of A.D.G.*, 895 P.2d 1067, 1070 (Colo.App.1994). The burden of persuasion refers to the "burden of persuading the trier of fact that the alleged fact is true." 2 *McCormick on Evidence* § 336 (John W. Strong ed., 1999).

The party seeking modification of a trial court's order bears the burden of persuasion or the burden of going forward with evidence establishing a change in circumstances. *See People v. Heilman*, 52 P.3d 224, 227 (Colo.2002)(discussing burden of going forward and resulting shift of burden in the context of police searches and seizures); *see also* 2 *McCormick on Evidence, supra*, § 337 ("the burdens of producing evidence and of persuasion with regard to any given issue are both generally allocated to the same party").

Accordingly, once the News meets the burden of going forward by establishing a change in circumstances, the Klebolds then assume the burden to prove that disclosure of the full Klebold autopsy report would cause substantial injury to the public interest to overcome the presumption in favor of disclosure of autopsy records. *See* § 24–72–204(6)(a); *Bodelson, supra,* 5 P.3d at 377; *see also* CRE 301 (burden of proof remains on party "on whom it was originally cast").

Here, there is an undisputed change in circumstances based on the release of the crime scene report. Thus, the News has met its burden of going forward. As a result, on remand, the Klebolds have the burden to establish that disclosure of the full Klebold autopsy report would cause substantial injury to the public interest.

In light of our disposition, we do not address the parties' remaining contentions.

The order denying modification of the original judgment is affirmed, the order denying the News' C.R.C.P. 60(b) motion is reversed, and the case is remanded for further proceedings consistent with this opinion.

Chief Judge HUME and Judge WEBB concur.