FILED

07/28/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0506

DA 19-0506

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 187

NICK BROOKE, ETHAN LERMAN, and BRIAN WEST,
individually and on behalf of all others similarly situated,

Petitioners and Appellants,

v.

STATE OF MONTANA, STEVE BULLOCK,
in his official capacity as Governor; and
RHONDA SCHAFFER, in her official capacity
as the Director of the Office of the State Public Defender,

Respondents and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV-2018-448
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Sean M. Morris, Jesse C. Kodadek, Worden Thane P.C.,
Missoula, Montana

For Appellees:

Timothy C. Fox, Montana Attorney General, Christopher D. Abbott,
Assistant Attorney General, Agency Legal Services Bureau,
Helena, Montana

Raphael J.C. Graybill, Special Assistant Attorney General, Chief Legal
Counsel, Office of the Governor, Helena, Montana

Michael P. Manion, Special Assistant Attorney General, Chief Legal
Counsel, Department of Administration, Helena, Montana

Submitted on Briefs:  May 20, 2020

Decided:  July 28, 2020

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Appellants Nick Brooke, Ethan Lerman, and Brian West ("Appellants") appeal an order by the First Judicial District Court granting the State's motion for summary judgment and denying Appellants' motion for partial summary judgment. We affirm.

¶2     We address the following issue on appeal:

*Whether a provision in the Office of the State Public Defender's contract with private attorneys specifying that hourly compensation rates can be unilaterally changed by the State permits prospective changes to a contract attorney's compensation rate for existing cases.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On May 10, 2018, Appellants filed a class action complaint against the State of Montana, Governor Steve Bullock, and the director of the Office of the State Public Defender ("OPD") Rhonda Schaffer ("Director") seeking declaratory relief, injunctive relief, and damages for breach of contract and violation of the Contract Clause, Article II, Section 31, of the Montana Constitution. Appellants are attorneys who contract with OPD to provide legal services for indigent clients. Appellants represent clients for whom OPD employees cannot provide legal representation due to conflict, lack of resources, or other reasons. To become an OPD contract attorney, a licensed Montana attorney signs a contract, referred to as a Memorandum of Understanding ("MOU"), with OPD. After the MOU is signed by the attorney and approved by a representative of OPD, OPD assigns cases to the attorney and pays the attorney in accordance with a fee schedule attached to the MOU.

¶4     OPD relies on biennial legislative appropriations to fund its operations and fulfill its mission of affording counsel to indigent criminal defendants and others entitled to legal counsel at public expense. Section 47-1-102(1), MCA. Until June 30, 2019, OPD operated on appropriations made during the 2017 legislative session. OPD's budget for that biennium was $32 million. OPD determined it was facing a shortfall of over $7 million if it did not cut costs. On January 29, 2018, OPD notified its contract attorneys by email that it proposed to reduce rates for all contracted services effective March 1, 2018. OPD also proposed to reduce the hourly rate for travel time from $62 to $20. OPD invited public comment and held two public meeting. On March 22, 2018, OPD announced the final rate changes and notified contract attorneys by email. OPD reduced the hourly rate of pay for contracted legal services from $62 to $56 per hour, nearly a ten percent reduction. Pay for case-related travel time was reduced from $62 to $45 per hour. The reduced rates were effective for any services rendered on or after April 1, 2018. Each of the Appellants had existing cases at the time of OPD's rate changes. Appellants continued their existing cases despite the newly reduced rates.

¶5     On October 17, 2018, the State filed a motion for summary judgment based on legal interpretation of the MOU under contract law. The Appellants filed a cross-motion for partial summary judgment asking the court to rule, as a matter of law, that Defendants are liable for breach of contract or violation of the Contract Clause. On June 27, 2019, the District Court granted the State's summary judgment motion, finding that the OPD did not breach its contract since the MOU specifically identified that the fee arrangement

4

was subject to change by the Director upon notice. Regarding the Contract Clause claim, the court found OPD had administrative discretion to reduce the rates to address budget issues since the Clause regulates legislative action, not the decisions of administrators, and OPD's decision was not compelled by the Legislature, citing *Smith v. Sorensen*, 748 F.2d 427, 436-37 (8th Cir. 1984).[1]

## STANDARD OF REVIEW

¶6      A district court's grant of summary judgment is reviewed de novo. *City of Missoula v. Fox*, 2019 MT 250, ¶ 6, 397 Mont. 388, 450 P.3d 898.

## DISCUSSION

¶7      *Whether a provision in the Office of the State Public Defender's contract with private attorneys specifying that hourly compensation rates can be unilaterally changed by the State permits prospective changes to a contract attorney's compensation rate for existing cases.*

¶8      Appellants contend OPD breached its contract by failing to pay them the hourly rate in effect at the time a case was accepted through the duration of representation on the case. Appellants argue that the MOU's language regarding compensation is ambiguous and that by failing to pay them the compensation rate that was in effect at the time they agreed to take on an assigned case, OPD breached the contract. Appellants also argue the District Court's interpretation of the MOU renders it illusory since it gives the Director unlimited discretion to alter compensation rates.

¶9      If the contract provision is clear and unambiguous, the court must apply the language as written. *Watters v. City of Billings*, 2017 MT 211, ¶16, 388 Mont. 376, 404

_____

[1] This issue was not raised on appeal by the Appellants.

5

P.3d 379; *see also* § 28-3-401, MCA ("The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity."). Contract attorneys are compensated according to a fee schedule, set by the OPD Director, that may be changed upon notice. Section 5(A) of the MOU specifies that compensation will be set "according to the fee schedule established by the Director" and refers to Attachment A, the fee schedule. Attachment A specifically states that rates are "subject to change by the Director" of OPD. Moreover, section 5(D) indicates that changes in the fee schedule may occur by stating: "If the . . . fee schedule is changed or updated in the future, Counsel will be notified of said change by email." The plain language of the MOU provides that OPD may change the fee schedule at any time, provided notice is given. Appellants' argument that OPD may not change rates for ongoing cases is nowhere in the contract. Appellants contend that the language in the newly revised March 22, 2018 fee schedule included an effective date of the revision (April 1, 2018), where the prior fee schedule did not, demonstrates that the prior fee schedule was ambiguous. However, insertion of an effective date does not alter the plain meaning of the language in the contract. The MOU's language allowing for modification of the compensation rate is not ambiguous.

¶10 Appellants assert various arguments alleging that the contract is illusory. Appellants argue the MOU lacked consideration because performance was optional since section 4 of the MOU neither required OPD to assign cases nor obligated contract attorneys to accept cases. However, they concede that a contract was formed upon

acceptance of an assigned case by OPD, which occurred here. They assert that since a contract was formed upon acceptance of an assigned case, the terms of the MOU at the time of the acceptance of the case are binding throughout their representation in the case. Appellants also allege that even though a contract was formed, the District Court's interpretation grants OPD unlimited discretion to universally reduce the compensation rates, rendering the MOU illusory.

¶11 Whether the contract was formed at the signing of the MOU or at the acceptance of an assigned case is inconsequential. Where part performance under an agreement occurs—in this case the Appellants' acceptance of their OPD case assignments—uncertainty as to the existence of a contract is removed and "a contract enforceable as a bargain has been formed." *Somont Oil Co. v. Nutter*, 228 Mont. 467, 473, 743 P.2d 1016, 1019 (1987). Regardless of when the contract was formed between the Appellant contract attorneys and OPD, the language of the MOU governed the parties' commitment. As discussed above, the language in the MOU is clear that the rates are subject to change. Providing further clarification that the parties mutually agreed to terms that allow the Director to change the fee schedule upon notice and that the compensation rate is tied to when the work is performed, not when a case is accepted, is section 5(B) and 5(C), which require contract attorneys to bill on a monthly, not a per case, basis.

¶12 Alternatively, Appellants argue that the District Court's interpretation of the MOU results in giving the Director of OPD unlimited discretion to modify the compensation

rates rendering its promise to pay contract attorneys illusory. This argument also fails. Essentially, Appellants assert the MOU's language on compensation results in allowing the government to choose whether to perform or not. This is not the case.

¶13 In reviewing contract disputes, this Court reads into all contracts a duty of good faith and fair dealing. *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT 301, ¶ 18, 340 Mont. 62, 172 P.3d 116. A contract becomes illusory when it consists of "words in promissory form that promise nothing." 2 Corbin on Contracts § 5.28 (rev. 2019). Or, a contract becomes illusory when the words of promise by their terms "make performance *entirely* optional" with the promisor. Restatement (Second) Contracts § 2 cmt. e (1981) (emphasis added). Relevant here, where a contract provision allows one party to modify the terms and that party relies on the provision "'in good faith' or in the 'exercise of reasonable discretion' or upon some other condition not wholly within the control of the promisor," the conclusion is that the promise is not illusory. 1 Corbin on Contracts § 1.17.

¶14 On its face, the MOU's language allowing modification of the compensation schedule does not render the contract illusory. Throughout the MOU, it is clear that in exchange for providing representation to indigent clients, contract attorneys will be compensated by OPD according to the fee schedule. The purpose of the MOU clearly states that contract attorneys "shall provide legal representation of persons assigned by OPD." Section 4 specifies that "Counsel shall perform all work necessary to complete each assigned case, unless OPD agrees to re-assign the case to another attorney upon the

written request of Counsel."[2]  In return for the services performed, section 5 provides that the contract attorney will be compensated by OPD according to the fee schedule.  Mutual consideration clearly exists under the plain language of the MOU.

¶15    OPD's decision to reduce compensation rates was not unlimited.  Both Montana statute, § 47-1-121, MCA, and the implied covenant of good faith and fair dealing constrained the Director's reduction in compensation rates.  Section 47-1-121, MCA, specifically indicates that the Director is not entitled to unlimited discretion in changing the fee schedule.  Section 47-1-121(1), MCA, states that the "director shall ensure that contracting for public defender services is done *fairly*."  (Emphasis added.)  Section 47-1-121(7), MCA, requires that the Director "establish *reasonable* compensation" for contract attorney services.  (Emphasis added.)  The implied covenant of good faith and fair dealing requires that the parties "not attempt, through dishonesty or abuse of discretion in performance, to deprive each other of the benefits of the contract."  *Phelps v. Frampton*, 2007 MT 263, ¶ 38, 339 Mont. 330, 170 P.3d 474 (emphasis omitted).  The Appellants have not asserted that OPD's decision to reduce compensation rates by ten percent due to its budget shortfall was made in bad faith or in an attempt to deprive the parties of the benefits of the contract.  Nor have Appellants asserted that the reduction

---

[2] Appellants assert that while they could have withdrawn, they would face consequences either in litigation or by the Montana Bar.  However, Rule 1.16 allows for withdrawal where it "can be accomplished without material adverse effect on the interests of the client."  Mont. R. Prof. Conduct 1.16(b)(1).  The MOU in section 16(C) provides for withdrawal and compliance of Rule 1.16(b)(1) by requiring that the withdrawing attorney prepare "substitution of counsel" pleadings.  Rule 1.16(b)(6) allows a lawyer to withdraw even where there is a material adverse effect to avoid an "unreasonable financial burden."  Appellants testified that the rate cut did not present an unreasonable financial burden justifying withdrawal.

was unreasonable. Rather, in essence, they assert that they interpreted the contract to prohibit changes in the compensation rate upon acceptance of a case. The plain language says otherwise. The MOU is not illusory.

## CONCLUSION

¶16 The District Court did not err in granting the State's motion for summary judgment. Nothing in the MOU indicates that the compensation rates are locked in place for the duration of the contract attorney's representation. The MOU's language clearly provides for prospective modification of compensation rates at the OPD Director's discretion. This discretion to change the compensation rates is limited by both Montana statute, § 47-1-121, MCA, and the implied covenant of good faith and fair dealing. However, budget shortfalls compelling contract rate changes violates neither.

¶17 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE